PENITENTIARY COMPANY NUMBER 2 *v.* GORDON, governor.

1. The verdict was supported by the evidence.
2. In a suit upon the bond of a penitentiary company for negligent escapes of convicts, after it is shown that such company received them, the burden is on it to show that they were never convicted by courts of competent jurisdiction.
3. That a demurrer was overruled is not a ground for a new trial.
4. The executive orders, reciting the number of escapes from the defendant and the number in which the excuses rendered were held unsatisfactory, and the refusal to make proper payment therefor, and directing that suit be brought upon the bond of the defendant for the recovery of the penalty in each case, were the basis of the right to recover, and were properly placed in evidence.

| 85 | 159 |
|----|-----|
| 116 | 533 |
| 85 | 159 |
| 119 | 732 |
| 85 | 159 |
| 130 | 487 |

5. Certain recitals in the orders might have been excluded on special objections to them; but an objection to the whole order was properly overruled.

6. An amendment declaring upon the executive orders was necessary and proper, and set forth no new cause of action.

7. The decision of the governor made a *prima facie* case authorizing a recovery unless rebutted by the defendant.

8. Testimony that upon a claim by the governor on part of the State, as to escapes, with a denial by the defendant as to liability and negligence, the governor in view of all the facts agreed to accept for the State a certain sum for escapes to a certain date, in settlement of the State's claim, and that this amount was paid into the treasury, was not admissible under a plea of payment, because the amount said to have been paid was less than the full amount claimed by the governor; nor under a plea of accord and satisfaction, because the governor had no power to compromise a claim due the State by the defendant on account of negligent escapes.

April 14, 1890.

Verdict. Evidence. Negligence. Burden of proof. Demurrer. Practice. Convicts. Officers. Governor. Amendment. Charge of court. Pleadings. Before Judge MARSHALL J. CLARKE. Fulton superior court. September term, 1889.

The opinion states in full everything contained in the official report, except the following: It appears from the record that it was admitted at the trial that the convicts in question escaped from the custody of the defendant under its lease; and the only issue submitted to the jury was as to whether this was through its negligence. There appeared in evidence a transcript from the register of the principal keeper of the penitentiary, certified by him, stating the names of each of the convicts in question, their crimes and the length of their sentences, the dates they were received and (with one exception) of their escapes. The exception and four others were recaptured after the lapse of sixty days, and one of these was resentenced for escape. As to nine of the escaped, affidavits in the nature of reports made to the principal keeper by superintendents or cap-

tains of camps of defendant, and one by a physician in charge of one of them, were introduced. From these it appeared that one convict who had but two more months to serve, and who was a "night burner" at a kiln, escaped in the dark from the guard; and in a few minutes the escape was discovered and pursuit instituted, but it failed to capture him. Two others were left off of the chain at noon to oil the mills, without the knowledge of the guard, and they escaped through a large canal and went into a large swamp. The captain, who was at home sick, reached the camp two hours afterwards, started after them with his dogs, ran them into South Carolina and lost them. Another, with a very short time to serve, was used as a cook. He ran out of the guard lines, was pursued immediately and all night into South Carolina, every means possible being used for his capture and his escape being unavoidable. Another was suffering from hernia, and as was customary all chains had been ordered off of him by the physician in charge. He had never done any work. While in this condition he escaped from the hospital guard, assisted probably by an outside confederate. Another was one of the number let out of the stockade on Sundays to supply the other convicts with water for drinking and washing, and to take their clean clothes to them. Failing to report in thirty minutes, as required by rule, dogs were put upon his track and he was pursued into Atlanta through a hard rain and lost. The one recaptured and resentenced had served nearly out his term of five years, and according to custom was used somewhat as a "trusty"; and it seems from the report made as to him that he escaped after being resentenced, the superintendent stating that he had no information of the resentence, the books of the camp having been burned in a building at the stockade, and that this was the cause of the escape. Another was

seen at sundown when the convicts stopped work and were ordered on the chain to be carried to the stockade. He was ordered to take his place with the others by an employee not a guard, who, believing he had done so, paid no further attention to him. He was missed in the count, and immediate search and every possible means were used to capture him, including an offer of $25 reward and extensive advertisement by postal card, without result. Another escaped during the excitement caused by an unusually heavy blast of ore. The men did not get as far away as they ought; and when the blast occurred, it threw an immense quantity of ore around them. The guards and all others were engaged in dodging the falling pieces, and after quiet was restored the escape was discovered. Pursuit with dogs was begun, but they failed to capture him after doing all in their power. The lessees used one guard to from five to eight convicts, such guards being armed with double-barrelled shot-guns loaded. The defendant leased four or five hundred or more convicts. The principal keepers regarded them as sufficiently guarded; and the predecessor of the present incumbent of that office testified that the excuses made to him for escapes were in most of the cases satisfactory to him. The present principal keeper, in his report for 1884-86, stated, however, that there were a great number of escapes, caused by the fact that the convicts were largely worked out of doors, together with the occasional inefficiency of a guard. Convicts are always on the lookout for a chance to escape, and will take almost any chance to effect it. The stockades were generally well adapted for holding convicts; and at night they were chained together in a building, and a guard was stationed at each of the four corners of the fence, enclosing about an acre. A guard's directions are to order a convict trying to escape to stop, and to

shoot him if he does not. The convict above referred to as a sufferer from hernia, was regarded as in such feeble health as to be unable to get away; appeared to be delicate or consumptive. One involved in the suit and not referred to above, was turned loose by a guard who left with him. This guard had been well recommended to defendant. Another one had escaped three or four times, and over $300 had been spent in recapturing him. He also is sickly and unable to work, and it is a great hardship to chain him heavily. He was recaptured, and is now in the penitentiary. The last time he escaped he bribed a boy who was hauling sawdust, with twenty-five cents given him by W. B. Lowe, president of defendant, to let him get into the wagon and be covered with sawdust; and thus escaped. Lowe testified that they could not work convicts out of doors without trusting them to some extent. Such things as cleaning the building, carrying off refuse, bringing water, etc., are necessary to be done; and if freedmen are employed for this purpose, they will bring in clothes to the convicts and assist them to escape; and more escapes would thus occur than with "trusties." He further testified that it was almost impossible to arrange so that no escapes would occur; and that the system adopted was the one that had ordinarily produced the best results. He visited the camps every two or three months, made close inspections and inquiries as to the management and treatment of the convicts, and as to the precautions of the guards, etc. Under this system, he had admitted to the governor that some escapes were negligent, and paid for them; he did not so admit as to the ones involved in this suit. One of them not heretofore referred to escaped at the time of the fire mentioned. The building caught fire, and it was with difficulty that they got the men out, there being sixty or seventy of them; and in the confusion but one escaped. Another was

one of four cutting logs in the woods with one guard. One started to run, and the guard fired his gun at him. He threatened the others with an axe, but allowed one to escape, fearing to fire off the remaining barrel of his gun, as he did not know what the others would do. The principal keeper visits the camps monthly, and it is not known there at what time he will arrive.

The objections to the amendment to the declaration, referred to in the sixth part of the opinion, were that it set up a new cause of action and an adjudication by the governor which was illegal, and that it was irrelevant and calculated to mislead the jury. The demurrer to the declaration, referred to in the third part of the opinion, was general.

Cox & REED and J. L. HOPKINS & SON, for plaintiff in error.

C. D. HILL, solicitor-general, and MAYSON & HILL, *contra.*

SIMMONS, Justice.

The governor brought suit on the bond of the defendant for $3,800 damages caused by the escape of nineteen named convicts, giving the date and place of each, and alleging that each and every escape was negligent and caused by the carelessness and insufficient watchfulness of the guards, employees and officers of the company who were in charge of the convicts. Attached to the declaration is a copy of the bond in the sum of $37,500, dated June 21, 1876, requiring, among other things, that the principal shall keep the convicts hired to it "securely, without expense to the State, and with such guards and safeguards as the law requires, and manage and keep them in accordance with the rules and regulations now of force or which may hereafter be legally adopted for the control of such convicts, . . report under oath all escapes and the circum-

stances attending the same, as required by law, to the principal keeper, and shall pay the damages specified by law for each negligent escape, . . and shall in all respects discharge their duty under the law touching the management, control and keeping of said convicts." This declaration was amended by alleging that "the principal keeper having laid these and other facts before the governor of Georgia, Henry D. McDaniel and John B. Gordon as governors of the State of Georgia did, from all the circumstances attending said escapes and by other means, find the aforesaid nineteen escapes were caused by negligence, and they as aforesaid did order suit to be instituted for damages against Penitentiary Company No. 2, as provided by law." To this declaration the defendant filed two pleas: (1) the general issue, and (2) accord and satisfaction. On the trial the jury returned a verdict for $3,800. The defendant made a motion for a new trial, on the several grounds therein stated, which will be found set out in the official report.

1. The 1st, 2d, 3d and 4th grounds may be considered together. They are the usual ones that the verdict is contrary to law and the evidence. The 4th ground specifies wherein the evidence fails to support the verdict, and says there was no proof that the persons alleged to have been escaped convicts were convicted by courts of competent jurisdiction, nor as to the sentences under which they were held, and no legal proof that they were convicted at all, nor of the dates of the expiration of the sentences. Upon these grounds generally, we have to say that we have carefully examined the evidence sent up in this record, and that it is sufficient to sustain the finding of the jury. The question of negligence was fairly submitted to the jury by the court in its charge, and there being evidence to sustain the verdict, and the trial judge being satisfied

therewith, we will not interfere with his discretion in refusing to grant a new trial upon these general grounds.

2. As to the specification in the 4th ground recited above, we think that when the State showed by evidence that the defendant received these prisoners as convicts it made out a *prima facie* case, and if they were not convicts or had never been convicted by a court of competent jurisdiction, the burden was cast upon the defendant to show it. The reception of them by the defendant from the officers of the State as convicts, was an admission on its part that they had been convicted and sentenced, and while the defendant may not be estopped from denying it, the burden is certainly cast upon it to prove that they were not convicts.

5. We cannot consider the 5th ground, because the overruling of a demurrer is not a ground for a motion for a new trial, as we have frequently decided.

5. The 6th ground complains of the admission in evidence, over objection of the defendant, of two certified copies of executive orders of the governor, dated September 29th, 1885, and October 27th, 1886; the first reciting that the defendant had had, from November 2, 1882, to July 1, 1885, thirty-six escapes (naming them); that after consultation with the attorney-general, the excuses rendered in the cases of eighteen of them (naming) were deemed satisfactory, and the excuses submitted in the cases of the others were deemed unsatisfactory and insufficient to relieve the company from the penalty imposed by law in such cases; and that it had paid into the treasury for the escape of nine of these (naming), and refused to pay the same sum for the escape of the remaining nine; and therefore it was ordered that suit be instituted on the bond of the company, as provided by law, for the recovery of the penalty in each of the cases of the nine last mentioned.

The other order is in similar form, and directs that in default of payment, by November 16, 1886, to the State treasurer of $200 each for the escapes of ten named in which the excuses rendered were held to be unsatisfactory, suit be brought as above stated. The objection to these orders was, that no issue as to the right of the plaintiff to bring the suit was made, and that the defendant could not be bound by any judgment in them.

There was no error in admitting these orders as evidence. They were the basis of the right of the plaintiff to recover in the case. If the plaintiff had failed to show that the governor had considered these escapes and had rendered his judgment that the defendant was negligent therein, he would have failed to make out his case, and the court would have been compelled on motion to grant a nonsuit. The 7th section of the act of 1876 (p. 40), relating to the leasing out of penitentiary convicts by the governor, declares that "it shall be the duty of the lessee or lessees under this act, immediately after any escape, to make a report in writing to the principal keeper, who shall lay the same before the governor, of all the circumstances attending such escape, and if the governor shall find therefrom, or by any other means, that such escape was caused by negligence, it shall be his duty to institute suit for the damages herein provided for." The law at that time made it a condition precedent to bringing suit for the escape of a convict, that the governor should find that the escape was negligent. He was required to make the investigation from the reports of the lessees, and by other means, and render his decision before suit could be brought. There was no presumption against the defendant until that decision by the governor was rendered. When he did make the investigation and determined that the defendant was negligent, that decision became *prima facie* the truth, and was binding

on the defendant to that extent; and when the decision embraced in the order was introduced in evidence before the jury, unless the defendant rebutted it and overcame it by proof, the decision was sufficient to authorize the jury to find in favor of the plaintiff. Under the act of September 27th, 1889 (p. 149), the rule has been changed. This act declares "that every escape shall be held and deemed negligent, unless within the sixty days allowed by law for the payment of damages for escapes, it shall be made to appear by competent evidence submitted to the governor that such escape was not negligent." Under the former act, the burden was on the governor to investigate escapes and render his decision that the lessee had been negligent. Under this act, no investigation by the governor is necessary, unless brought about by the lessee. The burden is cast upon him within sixty days from an escape to prove to the governor that the escape was not negligent. Unless he requests an investigation by the governor within the sixty days, the law presumes that he was negligent. If he makes no request of the governor, and no investigation is had, and the sixty days expires, the governor, without any investigation, can order the penalty to be paid, and if not paid, that suit be instituted upon the bond.

5. It is also urged by counsel for the plaintiff in error that some of the recitals in these orders were illegal, and tended to damage the defendant before the jury, the recital as to "having consulted with the attorney-general," and as to the number of escapes during Governor Stephens' administration, etc. If these objections had been made to the trial judge, he doubtless would have excluded them; but as they were not made, and as the objection made was to the whole order, we think the court did right to overrule it and admit the orders in evidence.

6. The 7th ground complains that the court overruled the objection of the defendant to the amendment to the declaration. We think the court was right in this ruling also. As we have remarked, in the discussion of the 6th ground of the motion, this was the basis of the plaintiff's right to recover. If he could not have recovered without putting in proof of the orders complained of in the 6th ground, of course he could not submit that proof without a proper allegation in his declaration, and it was proper for the court to allow the amendment. Nor was it a new cause of action, as claimed by the plaintiff in error.

7. The 8th ground complains that the court erred in this : In admitting the executive orders referred to in the 6th ground, the court stated that they would be admitted not to show any negligence in defendant, but only that the governor had taken a necessary step preliminary to the bringing of the suit; and that he would control them in his charge. All the reference made to them in the charge, however, was this : "Before leaving the matter of evidence, there is one item of it to which I would particularly direct your attention. I refer to the transcript from the minutes of the executive department, introduced by the plaintiff, and showing some proceedings had before the governor. This transcript cannot be considered by you for the purpose of showing that the escapes recited in it were due to the negligence of the defendant"; the objection to this charge being that said orders ought not to be considered by the jury at all, as they were admissible only to show that the governor had the right to bring the suit, which right was not in issue. If we are right in our views as to the 6th ground of the motion, it follows that there can be no error in this assignment. The court gave a more favorable charge on this subject in favor of the defendant than it was entitled to. The

court ought to have instructed the jury that they must consider the decision of the governor, and that it made a *prima facie* case which would authorize them to find for the plaintiff, unless rebutted or overcome by the defendant.

8. The defendant filed the following plea:

"That as to the escapes sued on and which occurred prior to September 12th, 1885, this defendant fully settled with the State, to wit, on said date, by an agreement then and there had with the governor of said State, in pursuance of which and in execution of which said agreement, this defendant by its president then and there paid to plaintiff the sum of eighteen hundred dollars, which was in full payment and satisfaction of and for all liability of defendant on account of said escapes to that time; and of this defendant puts itself upon the country."

The defendant complains that, under this plea, the court erred in ruling out the testimony of Lowe, Towers and others, in substance as follows: that there was a claim upon the part of the State being urged by the governor as to those escapes; that the defendant denied liability and negligence; and that with all these facts before him, the governor agreed that he would take for the State the sum of $1,800 for escapes to September 12, 1885, as a settlement of the account between the State and Penitentiary Co. No. 2 on account of escapes of convicts; and that in pursuance of that agreement, a check of that amount and date was made by Lowe and delivered to the governor in the presence of Towers (the principal keeper) and by the treasurer was covered into the State treasury. There was no error in excluding this testimony. If the plea was a plea of payment, as contended by counsel for the plaintiff in error, the evidence offered did not tend to establish the truth thereof, because it shows that the amount of the check was not the full amount which the governor claimed was due the State. If it was a plea of accord and sat-

isfaction (which it seems to be), the court was right in excluding the testimony, because under the act of 1876, *supra*, the governor had no power or authority to compromise with the defendant any claim which was due by it to the State on account of negligently permitting convicts to escape. As we have seen, that act required him to make an investigation, and to find whether the escapes reported to him were negligent or not. If they were negligent, his duty was to so find, and to order a suit upon the bond of the defendant in case it refused to pay the penalty. If the escapes, in his opinion, were not negligent, there was no liability on the part of the defendant. All persons dealing with a public officer must at their peril ascertain the extent of his authority, and one who claims title through the act of such an officer is bound to see that his powers were adequate to the transaction undertaken. The State cannot be estopped by the acts of any of its officers, done in the exercise of a power not conferred upon them, any more than it can be bound by contracts made by its officers which they were not empowered to make. The powers of all officers are defined and conferred by law, and of these all persons who deal with them must take notice. Acts done in' excess of the power conferred are not official acts. Mechem's Public Offices and Officers, §§923, 924. *State* v. *Southwestern R. Co.*, 70 *Ga.* 11; *Day Company* v. *State*, 68 Tex. 526. It is not claimed that, excluding the element of accord and satisfaction, any of the money paid was on account of convicts whose escape is embraced in this suit. *Judgment affirmed.*