### 135. MAYOR AND COUNCIL OF MONTEZUMA *v.* LAW.

1. In the absence of express authority, a municipal corporation can not acquire property or perform any act beyond its territorial limits. Therefore, where an act of the legislature authorized the city of Montezuma to build a bridge across Flint river on a public road of the county outside of the corporate limits of the city, but did not impose upon the city the duty of maintaining the bridge, the city was not liable for any injury resulting, not from any defective construction of the bridge, but because of its unsafe condition for want of repair.
2. A municipal corporation can not be held liable for failure to perform a duty when the duty of performance has not been imposed upon it by law, and which it has no power to perform, for lack of authority to raise revenue for that purpose.

Action for damages, from Macon superior court—Judge Littlejohn. July 27, 1906.

Argued February 26,—Decided April 11, 1907.

*Greer & Felton,* for plaintiff in error.

*L. E. Heath, Haygood & Cutts,* contra.

HILL, C. J.  H. F. Law brought suit in the superior court of
Macon county against the mayor and council of the town of Monte-
zuma for damages to his horse received while driving across a bridge
over Flint river.   The jury, under the charge of the court, found a
verdict for the plaintiff, and a motion for a new trial was overruled.
The only question which this court deems it necessary to decide is
whether, under the undisputed facts, the city of Montezuma is lia-
ble in damages for an injury caused by the unsafe condition of the
bridge, due to a failure to keep it in repair.  This bridge was
erected across Flint river by the city of Montezuma in 1889, in
pursuance of an act of the legislature authorizing the city to issue
bonds for the purpose of raising money with which to build it.
The bridge was outside the corporate limits of the city, and is ad-
mitted to be a part of the public road of the county of Macon, lead-
ing from Montezuma across Flint river to the western part of the
county.   It is contended that it is therefore a county bridge, and
that the duty of keeping it in safe condition as to repair is on the
county authorities, and not upon the municipality.

The act of 1888 (Acts of 1888, p. 204, sec. 3) empowered the
mayor and council of the town of Montezuma to apply the pro-
ceeds of certain bonds, which it was authorized to issue for the pur-
pose, "to the building of a bridge, with abutments, earthworks,
trestles and other approaches as may be necessary across Flint river
near Montezuma, at or near what is known as the 'Montezuma free
ferry;'" and the city built the bridge from the proceeds of these
bonds, and this is the bridge where the injury occurred to the
property of the plaintiff.   No authority is given to the city of
Montezuma by this act, or by any other law, to maintain the bridge,
or to keep the same in repair, or to raise revenue for that purpose.
"A municipal corporation being a governmental institution, de-
signed to create a local government over a limited territory, the
general rule is that such a corporation can not purchase and hold
real estate beyond its territorial limits, unless the power to do so
is expressly given by the legislature."   *Langley* v. *Augusta,* 118
*Ga.* 594; *City Council of Augusta* v. *Mackey,* 113 *Ga.* 64; 20 Am.
& Eng. Enc. of Law (2d ed.), 1187.  While the act empowers the
city of Montezuma to build the bridge, it does not follow that the
right was implied to maintain the bridge and keep it in repair af-
ter it was built.   Public acts authorizing municipal corporations

to own property, or to perform any duty beyond the territorial limits of the municipality, must be construed strictly, and unless the right is expressly given, or the duty expressly imposed, it can not be derived by implication. The cases of the city of Augusta against various parties, growing out of injuries received on the Augusta bridge over the Savannah river and beyond the territorial limits of the city, were maintained upon the authority expressly given to the city of Augusta, by an act of the legislature, to erect the bridge and to operate and maintain the same as a toll bridge. And in every case that we have been able to find, where the municipality has been held liable for damages resulting from acts of negligence on property beyond its territorial limits, the right to own such property and to erect public works for the municipality thereon and to maintain the same was expressly given by the legislature of the State. *City Council of Augusta* v. *Hudson,* 94 *Ga.* 135; *Augusta* v. *Owens,* 111 *Ga* 464; *City Council of Augusta* v. *Mackey,* 113 *Ga.* 64; *Langley* v. *Augusta,* 118 *Ga.* 591.

When this bridge was erected across Flint river by the city of Montezuma, on a public road of the county, it became a county bridge, and the duty was imposed upon the county authorities to keep it in repair. "A bridge spanning a stream which is crossed by a public road . . is a 'county bridge,' though the work of constructing the same be done by private citizens and a portion of the materials therefor be supplied by them, when the doing of such work and the furnishing of such materials is in pursuance of an agreement between them and the proper county authorities, who, under the terms thereof, supplied the remaining materials needed for the structure. Semble, that it would be a 'county bridge' though the citizens supplied all the materials and built it with the permission of such authorities; or without such permission, where the latter, in behalf of the public, accepted the bridge and allowed it to remain in place." *County of Tattnall* v. *Newton,* 112 *Ga.* 779. On page 780 of the opinion, the Supreme Court says: "If a public bridge, and not within the limits of an incorporated municipality, it seems inevitable that it must be regarded as a county bridge. No matter how the bridge comes into being, if it does so or remains in place with the assent of the proper county authority or authorities, its character as a public bridge becomes established." The court further holds in this de-

cision that if the county authorities permitted citizens to build a bridge on a public highway, or even if they built one without the permission of the county authorities, and it was accepted by the county authorities, either expressly or by acquiescing in its remaining in place, it would be all the same. The bridge would belong to the county. This rule is also expressly declared to be the law by Elliott on Roads and Streets (2d ed.), §28, and in many cases cited in 4 Am. & Eng. Enc. of Law (2d ed.), 921. It therefore follows, that the bridge in question, although built by the city of Montezuma, and although it was maintained as a matter of fact by the city, having been built by permission of the county on its public highway, became the property of the county, and the duty devolved upon the authorities of the county to keep the same in safe condition and proper repair, and the county, and not the city, would be responsible in damages for any negligent failure to perform this duty. We therefore reverse the judgment of the trial court in refusing to grant a new trial.

*Judgment reversed.*