48189. CITY OF GAINESVILLE v. PRITCHETT et al.

HALL, Presiding Judge. This is an appeal by the City of Gainesville from the denial of its motion for summary judgment in a nuisance action. We find that genuine issues of material fact remain, and affirm the ruling of the trial judge.

Mr. and Mrs. Pritchett, appellees here, suffered property damage and personal injury on July 11, 1971, when in cruising the channel of the Chattahoochee River in Lake Sidney Lanier after dark they collided with a ski jump barge or float which had been towed into the channel and left there since approximately July 3. The barge had been used for a ski jump show given in conjunction with a presumably non-profit July Fourth celebration which had been the result of planning and entertainment by the Chattahoochee Ski Club, Inc.; Park and

Recreation Department of the City of Gainesville; and Paul E. Bolding Post No. 7, the American Legion, Inc.

The Pritchett's claim for damages in two counts, negligence and nuisance, named the City and the Legion as defendants. Answering, the City raised numerous defenses and moved for dismissal of Count 1 as to it, on the ground that the City's efforts were undertaken in its governmental capacity and no liability would attach for negligence. This motion was granted, leaving only the nuisance count pending against the City. Subsequently, the City moved for summary judgment. The motion was overruled and this appeal was taken.

In support of its position that it should have had summary judgment, the City raises five issues which we resolve as follows:

1. The alleged acts were performed within the City's governmental capacity and therefor no liability can attach. This defense to a nuisance claim must fail, because it makes no difference whether the underlying activity be governmental or proprietary (ministerial): "A municipality like any other individual or private corporation may be liable for damages it causes to a third party from the operation or maintenance of a nuisance, irrespective of whether it is exercising a governmental or a ministerial function. [Cits.]" *Town of Fort Oglethorpe v. Phillips,* 224 Ga. 834, 837 (165 SE2d 141) (1968). See Note, 5 Ga. S. B. J. 474 (1969).

2. The damages are too remote and intervening causes preponderate too greatly to permit recovery against the City. This contention may be answered merely by stating that questions of proximate causation except in the clearest cases are questions of fact. Here, the City simply denies that it participated or requested the placement of the barge in the lake. However, the evidence shows that an employee of the City did participate to an indeterminate extent in preparations for the festivities as will be discussed below, and a resolution of the questions raised on this point is properly for the trier of fact.

3. Neither the Park and Recreation Department of Gainesville nor its employee had authority to bind the City to an agreement with the ski club for joint participation in the skiing display, and therefore, these acts were ultra vires and the City has no responsibility.

Questions of the existence and extent of an agent's authority are generally for the trier of fact. 1 Encyc. of Ga. L., Agency § 45 (1960). The City appended to its motion the affidavit of White, the Superintendent of the Department, stating that he did not

authorize the employee to undertake any obligations for the department in connection with the celebration. Nonetheless, as the affidavit states, he did designate the employee to "talk with" other prospective participants and "assist . . . in planning that event." On his deposition when asked whether the Legion had ordered a particular type of entertainment, the employee answered, "No, *we* were in charge of the programming, the entertainment part." (Emphasis supplied.) The Legion representative referred to, in his deposition, stated his understanding of the arrangement, which was that ". . . it was just sort of a, you know, he said that the park would do this—park and rec [presumably, Park and Recreation Department of the City] would do this and it just happened."

Here, examination of the record reveals at least some evidence tending to show that the July Fourth celebration was a result of the combined endeavors of the Legion, the ski club, and the City. Although the White affidavit denies the existence of the employee's actual authority to participate in sponsoring the festivities, the City does not contend that he was without *apparent* authority to act for the City in these negotiations. Regardless of the degree of actual authority extended by a principal to his agent as between the two of them, nonetheless the principal will be liable for certain acts of his agent within the scope of the agent's apparent authority. *Commercial Auto Loan Corp. v. Baker,* 73 Ga. App. 534 (37 SE2d 636). In giving the Pritchetts the benefit of all favorable inferences that may be drawn from the evidence, as we must do, *Holland v. Sanfax Corp.,* 106 Ga. App. 1 (126 SE2d 442), we find remaining issues of apparent authority which must be resolved by the trier of fact.

4. The City contends that it is not liable because the injury occurred outside the City's territorial limits, and cites cases in which other cities were relieved of tort liability for acts which were ultra vires because beyond their territorial limits or otherwise beyond the City's charter authority to act. The cases relied on are *Mayor &c. of Gainesville v. Dunlap,* 147 Ga. 344 (94 SE 247); *Langley v. City Council of Augusta,* 118 Ga. 590 (45 SE 486, 98 ASR 133); *Loyd v. Mayor &c. of Columbus,* 90 Ga. 20 (15 SE 818); *Newton v. City of Moultrie,* 39 Ga. App. 702 (148 SE 299); *Mayor &c. of Montezuma v. Law,* 1 Ga. App. 579 (57 SE 1025). Contrary to the City's contention those cases do not establish a rule of law in Georgia that acts of a municipality or its agents outside the City boundaries are per se ultra vires and do not render the city

subject to suit. The rule stated by the cases is conditional: "As a general rule, a municipal corporation's powers cease at municipal boundaries, and can not, without express authority granted in its charter or necessary legislative implication therein, be exercised beyond its limits." *Mayor &c. of Gainesville v. Dunlap,* 147 Ga. 344 (2), supra. Accord, *Langley v. City Council of Augusta,* 118 Ga. 590 (1), *Newton v. City of Moultrie,* 39 Ga. App. 702, and *Loyd v. Mayor &c. of Columbus,* 90 Ga. 20, all supra.

The *Langley* case involved a claim that the city maintained a nuisance in the form of a ditch by plaintiff's property. There was a dispute as to whether this ditch was inside or outside the city limits, and the Georgia Supreme Court specifically stated that it saw no reason to determine that "perplexing question," in light of the fact that examination of the city charter showed that the city was not forbidden to perform acts outside its boundaries in connection with sewers and drains. The case shows that there is no Georgia rule that a city may not commit a nuisance outside its own boundaries.

Thus, the general rule of territorial limitation of a municipality's authority has an exception for express or implied charter authority for acts outside its boundaries. The principle has been stated as follows: "A municipal corporation is liable for torts committed in performing authorized work beyond the limits of the municipality." *City of Fairburn v. Clanton,* 102 Ga. App. 556 (117 SE2d 197).

Therefore, the proper inquiry is whether the act underlying the nuisance was lawful and "authorized"; if under city charter and state statute the municipality has power to undertake an act outside its boundaries, then the extraterritoriality of the act will not alone serve to insulate the city from liability.

Examination of the Gainesville charter shows that among the activities which that city may undertake outside its boundaries is condemnation of property for the purpose of providing public recreational facilities. Ga. L. 1956, § 2, pp. 2847, 2859. Moreover, the general laws of the State of Georgia confer additional powers on municipalities including the power to acquire or lease lands and buildings outside the city's corporate limits for use as parks, playgrounds and recreational centers and to provide for the conduct and maintenance of the same. Code § 69-602. A municipality may set up a recreation board with power not only to operate all types of recreational facilities but also "to operate

and conduct facilities on properties controlled by other authorities," Code § 69-603, and it may contract with any other political subdivision for the joint use of recreational and other facilities. Code § 69-312.

We find that the City of Gainesville was authorized to undertake recreational activities on land outside the city, and to join with others in the conduct of the recreational program in issue here, including promoting a ski jump show on the waters of Lake Lanier, which are under the control and regulation of the United States Army Corps of Engineers. Because the activity was authorized, the fact that it occurred outside the corporate limits is immaterial and will not in and of itself insulate the city from liability. It is important to note that our holding is that the activity would have been authorized had it been undertaken; we express no opinion on whether the city exercised its authority, as that is a question of the extent of the city's participation which is one of the fact questions remaining for decision in this case. Accordingly, we hold that upon the record and the issues presented on this appeal, the City has failed to show that the trial judge erred in denying it summary judgment.

*Judgment affirmed. Evans and Clark JJ., concur.*

ARGUED MAY 8, 1973 — DECIDED JULY 12, 1973 — REHEARING DENIED JULY 25, 1973 —

*Palmour & Palmour, J. E. Palmour, Jr.,* for appellant.
*Manning, Read & Richardson, Curtis R. Richardson,* for appellees.