63337, 63338. CITY OF ATLANTA v. BULL; and vice versa.

DEEN, Presiding Judge.

Sometime prior to February of 1978, the City of Atlanta decided to have a committee formed to investigate the feasibility of contracting for court reporting services for its municipal court and Paul Howard, an assistant city solicitor, was selected as the committee chairman. After the committee decided to enter into an experimental contract with a qualified court reporting firm, bids were invited and Dennis Bull, d/b/a Bull & Associates, was awarded the contract. On February 6, 1978, the Atlanta City Council adopted a resolution authorizing a thirteen-week contract beginning March 1, 1978, and expiring May 31, 1978. The parties entered into a written contract, but the executed copy has been lost. On June 1, 1978, the parties executed a second contract which, by its terms, expired on June 30, 1978. The resolution authorizing the first contract was rescinded on July 5, 1978, by the City Council, approved by the Mayor on July 13, 1978, and the City Council never authorized any extension or modification of the contract.

Before the expiration of the second contract, Bull wrote to the committee chairman offering to provide court reporting services for the Municipal Court from July 1, 1978, to June 30, 1979, under the same terms as the two previous contracts with two minor changes (afternoon per session fee increased to $55 and elimination of a rebate on transcripts to the city). The committee chairman testified that he agreed to allow Bull to continue providing the reporting service, but no written contract was executed.

Bull provided court reporting services up to September 29, 1979, and was paid in full for his services. On September 29, 1979, Bull's court reporters were orally informed that their services would no longer be needed. Sometime prior to March of 1979 the city had solicited bids from various court reporting firms (including appellee's) and after reviewing the bids had awarded a new contract to another firm which began providing services on the date Bull's firm was terminated. On October 1, 1979, Bull sent a letter to the city contract administrator and demanded payment to compensate him for the thirty days he would have worked if he had been given thirty days notice as provided in Section Nine of the first and second

contracts. Appellant refused to pay this amount and Bull filed a suit for damages. The City of Atlanta appeals from the grant of a directed verdict in favor of Bull contending that a directed verdict should have been entered in its favor. *Held:*

Purchasing procedures for the City of Atlanta are set forth in the City Charter, Ga. L. 1973, p. 2188, Sec. 6-401, p. 2247, "The governing body shall prescribe by ordinance and resolution the procedures to be followed in the making of contracts which shall bind the City. All contracts and all ordinances and resolutions which shall make or authorize contracts shall be approved as to form by the City Attorney. The Mayor shall sign all contracts; provided, however, the governing body may authorize the Mayor by ordinance to designate another appropriate official to sign any type contract."

In the present case, the second contract expired by its terms on June 30, 1978, and after that date there was only an agreement between Bull and the committee chairman that Bull would continue to provide court reporting services. "As a general rule of law, when authority is delegated by the legislature to a municipality to enter into contracts in a certain specified manner, it becomes the duty of any person dealing with such municipality in a contractual relation to see that there has been a compliance with the mandatory provisions of the law limiting and prescribing its powers." *Wiley v. City of Columbus,* 109 Ga. 295, 296 (34 SE 575) (1899). See also *Ingalls Iron Works Co. v. City of Forest Park,* 99 Ga. App. 706 (109 SE2d 835) (1959). In *Russell v. City of Atlanta,* 103 Ga. App. 365 (119 SE2d 143) (1961), this court strictly construed the City Charter in force at that time to find that the city manager had no authority to enter into a parol contract binding upon the city. In *City of Jonesboro v. Shaw-Lightcap, Inc.,* 112 Ga. App. 890 (147 SE2d 65) (1966), where there was a charter provision similar to the one in the present case in that the Mayor and the City Council were empowered to make contracts in the city's corporate capacity, the court held that the Mayor acting alone and separately from the Council and without concurrence by that body, did not have authority to make a valid contract on behalf of the city.

In the present case, the committee chairman was acting without authority and could not enter into a valid extension of the first two contracts with Bull and modify two of their provisions. "The State cannot be estopped by the acts of any of its officers, done in the exercise of a power not conferred upon them, any more than it can be bound by contracts made by its officers which they were not empowered to make. The powers of all officers are defined and conferred by law, and of these all persons who deal with them must take notice." *Penitentiary Co. v. Gordon,* 85 Ga. 159, 171 (11 SE 584)

(1890). The rule has been codified as Code Ann. § 89-903. See also *Henderson v. Carter,* 229 Ga. 876 (195 SE2d 4) (1972). This same rule applies also to the Mayor and other city officials. Therefore, there was not a valid contract between Bull and the city after June 30, 1978, and the city was not required to give Bull notice before terminating his services. The trial court erred in granting a directed verdict in favor of Bull and denying the city's motion.

As the appeal in case number 63337 is reversed, it is not necessary to rule upon the appeal in number 63338, as it is dismissed because Bull contends the trial court erred in failing to award him certain attorney fees.

*Judgment reversed. Sognier and Pope, JJ., concur.*

DECIDED FEBRUARY 22, 1982 —
REHEARING DENIED MARCH 15, 1982.

*Marva J. Brooks, Malcolm J. Hall, Alford J. Dempsey, Jr.,* for appellant.
*Michael L. Wetzel,* for appellee.