## 70528. EXPOSITION ENTERPRISES, INC. v. GEORGE L. SMITH II GEORGIA WORLD CONGRESS CENTER AUTHORITY.

### (338 SE2d 726)

POPE, Judge.

This case arises from a dispute between appellant Exposition Enterprises, Inc. (Exposition), a show promoter, and appellee George L. Smith II Georgia World Congress Center Authority (Authority) regarding the Authority's decision not to rent space in the World Congress Center to Exposition for a proposed Fall Home Show, but to rent instead to a competitor of Exposition, Southern Exposition Management Company (SEMCO), to hold its own Fall Home Show. We take the following description of the proceedings below from the Authority's brief: "Appellee, GEO. L. SMITH II GEORGIA WORLD CONGRESS CENTER AUTHORITY (the 'Authority'), operates the State-owned Georgia World Congress Center which it rents to users for the conduct of exhibitions, trade shows, conventions, and similar events. In March, 1983, John Wilusz, a salesman employed by the Authority, orally informed Appellant, EXPOSITION ENTERPRISES, INC., a promoter of public shows, that the Authority had no prior scheduling commitments for certain dates in September, 1984, September, 1985, and September, 1986. A few days later, in March, 1983, the Authority received a letter from Appellant expressing Appellant's desire to reserve the World Congress Center for those dates in September, 1984, September, 1985 and September, 1986, for a Fall Home Show. Dan Graveline, the Director of the Authority, had previously discussed the possibility of a Fall Home Show with a competitor of the Appellant. After Appellant's reservation request was received, the Director of the Authority pursued those discussions with Appellant's competitor to a contract with the competitor. The Director of the Authority, in turn, rejected Appellant's 'reservation request.'

"The Appellant then brought this action claiming (1) the Authority's action 'constitutes a breach of the oral contract consummated between the parties, and any and all . . . contracts which have been implied by virtue of the conduct of the parties'; (2) the Authority's actions constitute an arbitrary and capricious use of delegated authority in violation of statute and the due process guarantees of the State and Federal Constitutions; (3) the Authority's actions are an 'express violation of the rules and regulations promulgated for reservations and use of' the Center; (4) the Authority's actions violate its duty to use the facilities to promote the best interest of the inhabitants of the State; (5) the Authority's actions interfere with Appellant's right to contract; and (6) the contract between the Authority and its competitor is void as against public policy because it tends to lessen competition in restraint of trade. Appellant sought damages and specific per-

formance of its alleged contract with the Authority. The Authority moved for summary judgment and its motion was granted."

The statutory provisions regarding the Authority are embodied in OCGA § 10-9-1 et seq. The provisions pertinent to this case read as follows: "The management of the business and affairs of the authority shall be vested in the board of governors, subject to the provisions of this chapter and to the provisions of bylaws adopted by the board of governors as authorized by this chapter." OCGA § 10-9-7 (a). "The board of governors shall have the power to make the bylaws, rules, and regulations for the government of the authority and the operation, management, and maintenance of the project as it may determine appropriate." OCGA § 10-9-7 (b). "The board of governors shall elect or appoint such officers as may be provided in the bylaws and may delegate to such officers, who need not be members of the board, such authority and responsibility as the board may determine appropriate." OCGA § 10-9-9 (a). "All officers and agents of the authority shall have such authority and perform such duties in the management of the authority as may be provided in the bylaws or as may be determined by action of the board not inconsistent with law or with the bylaws." OCGA § 10-9-9 (c). "The authority shall operate the project so as to ensure maximum use of the project." OCGA § 10-9-15 (a). "This chapter, being for the welfare of the state and its inhabitants, shall be liberally construed to effect the purposes hereof." OCGA § 10-9-18.

Article IV, Section 1, of the bylaws of the Authority provides among other offices of the Authority that of the Director. Section 2 of the same article provides that the Director of the Authority is not to be a member of the board. Article V, Section 5, defines the duties and powers of the Director, who is given the title of Chief Executive Officer of the Authority, and who is given responsibility for the day-to-day management of the business and affairs of the Authority. Among the powers of the Director is the power "[t]o execute contracts for the use of the Center . . . in accordance with the policies, forms, and schedules adopted and approved by the Board of Governors." Article V, Section 5 (f). The only scheduling policy promulgated by the board is as follows: "The Georgia World Congress Center shall offer priority to conventions and trade shows on the selection of available dates and space in the Georgia World Congress Center. Public and commercial events (i.e. automobile shows, boat shows, sports shows, etc.) shall be offered confirmed dates and space a maximum of two (2) years in advance. Further, public and commercial shows holding tentative dates in excess of two (2) years in advance shall be required to revise their dates and space as deemed necessary by the Georgia World Congress Center in order to enable the Georgia World Congress Center to accept a convention or trade show booking. However, the Georgia World

Congress Center will honor commitments to long standing annual public and commercial shows to the extent such shows will not be precluded from being offered alternate dates and consequently completely eliminated from the Georgia World Congress Center calendar of events."

1. The essence of this dispute is whether the Director of the Authority has the right to choose between competing offers to rent space at the Center on a basis other than which offer was made in writing first. There is nothing in the record to support Exposition's contention that the conversation between Wilusz, sales manager of the Authority, and Campbell, president of Exposition, constituted a contract binding on the Authority. Campbell's own letter to Wilusz of March 16, 1982 is not couched in terms confirming an existing agreement. "It was gratifying to learn of the availability of dates . . . as well as the knowledge that my desire for dates for . . . the Fall Home & Garden Show were not in conflict with current reservations. I would . . . appreciate your reserving for me the dates and Shows as follows. . . ." This is the language of an offer inviting response, not language memorializing an existing agreement. Further, as set out in the bylaws of the Authority, only the Chairman of the Board of Governors or the Director is authorized to contract on behalf of the Authority. Article V, Sections 1 (d), 5 (e), 5 (f).

"Powers of all public officers are defined by law and all persons must take notice thereof. The public may not be estopped by the acts of any officer done in the exercise of an unconferred power." OCGA § 45-6-5. See also *City of Calhoun v. Holland,* 222 Ga. 817 (152 SE2d 752) (1966); *City of Atlanta v. Bull,* 161 Ga. App. 648 (288 SE2d 335) (1982). Thus, Wilusz, as sales manager, could not have contracted on behalf of the Authority, and Exposition was obligated by law to know of his limitation.

2. From the record it appears that the Director knew of SEMCO's interest in putting on a Fall Home Show in 1984, although without knowing of any specific dates, before he learned from Wilusz of Exposition's offer to reserve specific dates for the same purpose. Thus, two questions are presented. First, does the Director have discretion under the law governing the Authority and the bylaws of the Authority to choose between competing offers, or in this case, when informed of one offer, to go and solicit another offer altogether? Clearly, the law vests the Board of Governors with discretion in the operation of the Authority. See OCGA § 10-9-7 (b). Clearly, the board may delegate that discretion, and chose to delegate that discretion to the Director. OCGA § 10-9-9 (a) and (c); Bylaws, Article V, Section 5. One of the functions of the board which it delegated to the Director was to ensure that the Center got the maximum use possible. Under the laws and bylaws cited above, the Director has discretion in ac-

cepting offers for use of the Center. Thus, the second question is presented. Did the Director properly use his discretion?

"[W]here [an authority] is authorized to do a particular act in its discretion, the courts will not control this discretion unless manifestly abused, nor inquire into the propriety, economy, and general wisdom of the undertaking, or into the details of the manner adopted to carry the matter into execution. [Cit.]" *J. C. Lewis Motor Co. v. Mayor &c. Savannah*, 210 Ga. 591, 597 (82 SE2d 132) (1954). Accord *Peeples v. Byrd*, 98 Ga. 688 (25 SE 677) (1896). Exposition claims that the situation in the present case is like that in the case of *Hilton Constr. Co. v. Rockdale County Bd. of Education*, 245 Ga. 533 (266 SE2d 157) (1980). There, the board sought bids on school construction. The law vested discretion in the board in that the award was to be made to the responsible bidder with the lowest acceptable bid. Appellant's bid was lowest, but the contract was awarded to the second lowest bidder. The board's rejection of appellant's bid was based on the board's lack of knowledge regarding appellant and its work. Without investigation by any board member, the board simply accepted the superintendent's statements that the known second bidder was preferable to the unknown appellant. The court in *Hilton* held that the board had not exercised its own judgment or discretion, but merely had accepted the recommendation of someone else.

The situation in the present case is different. The Director of the Authority testified that he had dealt with both SEMCO and Exposition in the operation of the Center. It was his judgment, based on his experience that Exposition had in the past been forced to cancel reservations it had made for shows more often than had SEMCO and his judgment that SEMCO had a better chance of making a success of a Fall Home Show, coupled with the fact that SEMCO already was doing an annual Spring Home Show in the Center, that the Authority would be better served by accepting SEMCO's offer. We, therefore, decline to find that the Director's decision was an abuse of discretion.

3. Finally, Exposition claims that the Director's decision to award the contract to SEMCO violates the Ga. Constitution, Art. 3, Sec. 6, Par. 5(c): "The General Assembly shall not have the power to authorize any contract . . . which may have the effect . . . of defeating or lessening competition, or encouraging a monopoly. . . ." Its argument in this regard is that the Director's use of discretion in selecting SEMCO over Exposition was arbitrary and capricious, and thus had an anticompetitive effect. This argument must fail in view of our holding in Division 2 that the Director did not abuse his discretion. The record shows that the Director reported his resolution of the scheduling conflict to the board, and that the board approved his decision. Further, the record shows that Exposition remains free to compete for space at the Center. The Authority offered Exposition alter-

native dates for its own Fall Home Show, but Exposition declined. For the foregoing reasons, we find no error in the trial court's grant of summary judgment.

*Judgment affirmed. Deen, P. J., and Beasley, J., concur.*

DECIDED NOVEMBER 27, 1985 —
REHEARING DENIED DECEMBER 10, 1985 — 

*John C. Mayoue*, for appellant.

*Timothy J. Sweeney, Michael J. Bowers, Attorney General, James P. Googe, Jr., Executive Assistant Attorney General, Marion O. Gordon, First Assistant Attorney General, J. Robert Coleman, Senior Assistant Attorney General, Charles T. Harrison III, Assistant Attorney General*, for appellee.