## S95Q0248. CITY OF ATLANTA et al. v. BLACK et al.

(457 SE2d 551)

HUNSTEIN, Justice.

This case comes to us from the United States Court of Appeals for the Eleventh Circuit, wherein the City of Atlanta and certain officers of the City's police department are challenging the district court's denial of their motion to set aside a consent order, entered in resolution of a suit in which they were the named defendants. The consent order incorporated a settlement agreement executed by two assistant city attorneys (on behalf of defendants) and counsel for plaintiffs. The consent order provides for the payment of $37,500 to plaintiffs and also requires the City to place limitations on its police officers' arrest powers, dictates revisions to the police department's field manual, and mandates changes to be made both in the police academy training program for recruits and in the in-service training for regular officers.

Defendants moved to set aside the consent order on the basis that the city attorneys who executed the settlement agreement were without authority to do so and the Atlanta City Council had refused to adopt the agreement. Defendants filed in the district court a certified copy of the applicable provisions of the Code of Ordinances of the City of Atlanta, including § 4-2007, which sets forth the sole power conferred by the City on its attorneys as to settlement of claims against the City. That ordinance provides:

> The city attorney shall have authority, without approval of the council, to settle all claims and suits for sums not to exceed $500 in each instance. Settlement of claims and suits in excess of $500 shall first be approved by the council.

The Eleventh Circuit certified the following question to this Court:

> Does an express restriction on a City attorney's right to settle a cause of action embodied in a municipal ordinance, which is not specifically communicated by the City or its attorney to an opposing party, circumscribe the City attorney's apparent authority to bind his client to a settlement agreement?

Although the Eleventh Circuit stressed that "[n]othing in this certification, including the particular phrasing of the foregoing question, is intended to limit the Supreme Court of Georgia in its consideration of the problem presented," *Black v. City of Atlanta*, 35 F3d 516, 518 (11th Cir. 1994), we address solely the monetary aspect of the chal-

lenged order[1] and, for the reasons set forth below, we answer the certified question in the affirmative.

> Powers of all public officers are defined by law and all persons must take notice thereof. The public may not be estopped by the acts of any officer done in the exercise of an unconferred power.

OCGA § 45-6-5. This Court has applied that principle for over a century. *Penitentiary Co. v. Gordon*, 85 Ga. 159, 171 (11 SE 584) (1890). See, e.g., *City of Warner Robins v. Rushing*, 259 Ga. 348 (381 SE2d 38) (1989) (city not bound by utility rate structure set by mayor); *City of Atlanta v. Bull*, 161 Ga. App. 648 (288 SE2d 335) (1982) (City of Atlanta not bound by court reporting services contract approved by assistant city solicitor who was chairman of committee formed to investigate the City's use of such services). See generally *White v. U. S. Dept. of Interior*, 639 FSupp. 82 (IV), (V) (M.D. Pa. 1986); *City of Jersey City v. Roosevelt Stadium Marina*, 509 A2d 808, 815 (I) (N.J. Super. 1986); McQuillin, The Law of Municipal Corporations, § 48.18 (3rd ed.); Apparent Authority of Agent of Municipality, 77 ALR3d 925.

Public sector attorneys, such as the assistant city attorneys in this case, are public officers. See *Smith v. Mueller*, 222 Ga. 186, 187 (1) (149 SE2d 319) (1966); *Templeman v. Jeffries*, 172 Ga. 895, 901 (2) (159 SE 248) (1931). "All persons dealing with a public officer must *at their peril* ascertain the extent of his authority." (Emphasis supplied.) *Penitentiary Co.*, supra at 171. See also *Malcom v. Webb*, 211 Ga. 449 (86 SE2d 489) (1955). It is

> the duty of any person dealing with [a] municipality in a contractual relation to see that there has been a compliance with the mandatory provisions of the law limiting and prescribing its powers[,]

*Wiley v. City of Columbus*, 109 Ga. 295, 296 (34 SE 575) (1899), a duty which includes determining that the public officer who executed a contract has the requisite authority. *Cole v. City of Atlanta*, 195 Ga. App. 67 (2) (392 SE2d 283) (1990); *City of Atlanta v. Bull*, supra. In this regard, parties are presumed to know the law, OCGA § 1-3-6, which includes not only statutes like OCGA § 45-6-5 but also the provisions of municipal ordinances. *City Council of St. Marys v. Crump*, 251 Ga. 594 (2) (308 SE2d 180) (1983).

---

[1] We intimate no opinion as to the propriety or enforceability of the injunctive provisions.

The district court, in denying defendants' motion to set aside the consent order, relied on *Brumbelow v. Northern Propane Gas Co.*, 251 Ga. 674 (2) (308 SE2d 544) (1983), a case in which this Court addressed the apparent authority of a private sector attorney in negotiating a private settlement between private parties. We held therein that

[u]nder Georgia law an attorney of record has apparent authority to enter into an agreement on behalf of his client and the agreement is enforceable against the client by other settling parties. [Cits.] . . . The authority may be considered plenary unless it is limited by the client and that limitation is communicated to opposing parties. [Cits.]

Id. at 674-675.

While this Court has limited the application of *Brumbelow*, particularly in those situations where the contract of settlement negotiated by counsel can become the judgment of a court, e.g., *Bridges v. Bridges*, 256 Ga. 348, 350 (1) (349 SE2d 172) (1986), we have never considered its application in the context of public sector attorneys negotiating settlements of claims of public interest.

While the authority of private sector attorneys negotiating private settlements between private parties may be considered plenary under *Brumbelow*, the same cannot be said of public sector attorneys. We recognize and reiterate that at all times, an attorney at law is an officer of the court. *Sams v. Olah*, 225 Ga. 497, 504 (7) (169 SE2d 790) (1969). However, the presumption of plenary authority that attaches to private sector attorneys, as set forth in *Brumbelow*, cannot apply to those attorneys who are also public officers since pursuant to OCGA § 45-6-5, public sector attorneys can exercise only those powers "defined and conferred by law."[2] *Penitentiary Co. v. Gordon*, supra at 171. Nothing in *Brumbelow* can be construed as expanding by case law the power of those public officers who are public sector attorneys or as carving out solely for the legal profession an exception to OCGA § 45-6-5. Clearly, nothing in *Brumbelow* compels this Court to redefine the powers of those public officers who are public sector attorneys, in that "[i]t is well settled that no consideration of public policy can properly induce a court to reject the statutory definition of the powers of an officer.' [Cit.]" *Gruber v. Fulton County*, 111 Ga. App. 71, 77 (140 SE2d 552) (1965). Rather, it is apparent that the holding in *Brumbelow* is not applicable to public sector attorneys.

This Court is not called upon in this case

---

[2] To the extent that *City of Atlanta v. Frank*, 120 Ga. App. 273 (2) (170 SE2d 265) (1969) can be read to the contrary, it is overruled.

> to draw a sharp line between incidental matters which a municipality, as other clients, in the handling of a lawsuit must [necessarily] leave to the discretion of its attorney, guided by such informal counsel as personal contact may supply, and matters more importantly affecting the rights of the client and the objectives of the suit.

*Town of Bath v. Norman*, 39 SE2d 363, 365 (N.C. 1946). However, to the extent the authority of an attorney conflicts with the defined authority of the attorney-as-public-officer, the authority of the public officer must prevail. Hence, we conclude that the law remains that the authority of public sector attorneys, as with all other public officers, must be deemed limited by the laws that define and prescribe their authority and that it is the duty of parties dealing with those public officers who are public sector attorneys to determine there has been compliance with all laws limiting and prescribing their powers.

In this case, plaintiffs were presumed to know that the authority conferred on the assistant city attorneys to enter into the monetary settlement of plaintiffs' claim was limited to $500. Furthermore, plaintiffs were under a duty to determine that the Council had preapproved the settlement terms as to monetary amounts in excess of $500.

That does not end the inquiry, however, because it is well-established that

> an estoppel arises as against the denial of agency when a principal places a purported agent in a position of apparent authority so that a person of ordinary prudence conversant with business usages and the nature of the particular business is justified in assuming that such agent has the authority to perform a particular act and deals with the agent upon that assumption. [Cits.]

*Intl. Indem. Co. v. Odom*, 174 Ga. App. 6, 7 (329 SE2d 307) (1985). However, this Court has recognized that

> "[t]he doctrine of estoppel is not applied as freely against a municipal corporation as against an individual. Municipalities act in both a governmental and a proprietary capacity, and an estoppel is not asserted if such will embarrass a municipality in its capacity as a governing body or operate to prevent it from exercising its police power. . . [.] While a municipality is not estopped to deny the validity of a contract wholly beyond its powers, it may be estopped by the exercise of contractual powers legally vested in it, and even by the exercise of governmental powers, to prevent manifest injus-

tice and wrongs to private persons, where the restraint placed upon a municipality to accomplish that purpose does not interfere with the exercise of governmental powers of the municipality. A municipality is subject to the rules of estoppel in those cases wherein equity and justice require their application, and may be estopped under certain circumstances by its act and conduct."

*City of Summerville v. Ga. Power Co.*, 205 Ga. 843, 845-846 (2) (55 SE2d 540) (1949). See also *Corey Outdoor Advertising v. Bd. of Zoning*, 254 Ga. 221 (3) (327 SE2d 178) (1985).

In the instant case, "aside from the fact that prudence would have dictated that [plaintiffs] obtain written authorization," *City of Jersey City v. Roosevelt Stadium*, supra at 815 (II), "[t]here can be no estoppel by conduct where both parties have equal knowledge or equal means of knowing the truth. [Cit.]" *Tybrisa Co. v. Tybeeland*, 220 Ga. 442, 446 (139 SE2d 302) (1964). There is no evidence that plaintiffs either orally inquired or took any reasonable steps to ascertain the necessary authorization had been obtained, and it is uncontroverted that the city attorneys made no representations which indicated they had obtained the requisite authorization or which otherwise excused plaintiffs' failure to fulfill their duty of determining that the city attorneys had complied with § 4-2007.

Accordingly, in answering the Eleventh Circuit's question in the affirmative, we hold that a public sector attorney's authority, like that of any other public officer, is defined and prescribed by law, including municipal ordinances such as the municipal ordinance in issue in this case.

*Certified question answered in the affirmative. All the Justices concur, except Carley and Thompson, JJ., who dissent.*

CARLEY, Justice, dissenting.

In the United States District Court for the Northern District of Georgia, Black and other named plaintiffs brought suit against appellants, the City of Atlanta and several of its police officers. Prior to trial, the City, through its attorneys of record, and the plaintiffs, through their attorneys of record, entered into an agreement settling all issues in the litigation. In reliance upon representations of counsel, the district court entered a consent order delineating the terms of the settlement. The consent order was signed by counsel for the parties and provided, in part, as follows: "The *parties* have executed and agree to the provisions of this consent order by and through their undersigned counsel of record." (Emphasis supplied.) Relying entirely upon OCGA § 45-6-5, this court holds that the certified question concerning the validity of that settlement must be answered in the af-

firmative. In my opinion, OCGA § 45-6-5 has no applicability here and the certified question should be answered in the negative. Therefore, I must respectfully dissent.

An attorney in the employ of a governmental entity may be a "public officer" in the same general sense as any other governmental employee. "Any one is a public officer who is appointed by the government and has any duty to perform concerning the public." *Templeman v. Jeffries*, 172 Ga. 895, 901 (2) (159 SE 248) (1931). However, the applicability of OCGA § 45-6-5 cannot be determined by considering only the fact that one occupies the general status of a "public officer." By its terms, OCGA § 45-6-5 relates only to the "powers" and "acts" of one who occupies that status. Thus, although a governmental employee may occupy the general status of a "public officer," OCGA § 45-6-5 is applicable only to the extent that he or she purports to exercise "powers" and perform "acts" in that general capacity.

In my opinion, the "powers" and "acts" of an attorney engaged in representing a governmental entity in a legal proceeding are in no way equivalent to the "powers" and "acts" of a "public officer" as that term is employed in OCGA § 45-6-5. Until today's decision, the "powers" and "acts" of such an attorney have always been deemed to be those of an "officer of the court." "An attorney does not hold an office or public trust, in the constitutional or *statutory sense of that term*, but is an officer of the court." (Emphasis supplied.) *Sams v. Olah*, 225 Ga. 497, 504 (7) (169 SE2d 790) (1969). Thus,

> [a]n attorney at law, even if he be also a city attorney, acting for a client in a legal proceeding is not an "officer of the city" . . . . He is then an officer of the court, and all of the presumptions of that office attach to him.

*City of Atlanta v. Frank*, 120 Ga. App. 273, 275 (2) (170 SE2d 265) (1969). Contrary to the majority opinion, an attorney who undertakes to represent a governmental entity in a legal proceeding must necessarily be considered an "officer of the court," rather than a "public officer." The status of "attorney" is entirely a function of the professional service that is being performed and is in no way dependent upon the nature of the client for whom that service is being rendered. Thus, when an "attorney" undertakes to represent a governmental entity in a legal proceeding, he or she occupies the specific status of an "officer of the court" and cannot simultaneously hold the general status of a "public officer." At that point, the status of the "attorney" has been elevated from that of a "public officer" in general to that of an "officer of the court" in specific.

> The lawyer stands in a unique position in our society. He is by virtue of the practice of his profession an officer of the court. [Cits.] . . . "The office of attorney is indispensable to the administration of justice and is intimate and peculiar in its relation to, and vital to the well-being of, the court."

*Sams v. Olah*, supra at 504 (7). It necessarily follows that, when an attorney undertakes to represent a governmental entity in a legal proceeding, his or her "powers" and "acts" must be deemed to be those of an "officer of the court" and not those of a "public officer" within the ambit of OCGA § 45-6-5.

Since OCGA § 45-6-5 clearly does not apply in this case, the controlling authority is *Brumbelow v. Northern Propane Gas Co.*, 251 Ga. 674 (308 SE2d 544) (1983). Under *Brumbelow*, an attorney's authority to settle "may be considered plenary unless it is limited by the client and that limitation is communicated to opposing parties. [Cits.]" *Brumbelow*, supra at 675 (2). By its terms, *Brumbelow* does not contemplate the publication of a general limitation on authority, but rather a communication which is specifically directed to opposing parties in the litigation. There is no contention that either the existence of the ordinance or the non-compliance therewith was specifically communicated to the plaintiffs.

Moreover, the ordinance here in question specifies that only settlements for amounts over $500 must first be specifically approved by the City Council. Thus, that ordinance does not impose any limitation on counsel's authority to settle a case on behalf of appellants. To the contrary, the ordinance constitutes an expansion of counsel's authority in that regard by providing that all settlements for less than $500 are deemed to be pre-approved by the City Council. Therefore, the majority errs in concluding that plaintiffs had equal knowledge that the settlement was unauthorized. Even if the existence of the ordinance had been communicated, the plaintiffs would have known only that counsel's offer to settle their claims for $37,500 was not a pre-approved offer from the City Council, but was one which counsel was authorized to make after obtaining the approval of the City Council. Notwithstanding such a disclosure, plaintiffs *and* the district court still would have been entitled to assume that counsel had obtained the City Council's necessary approval of the settlement offer before signing the consent order in their capacity as the City's attorneys of record, unless plaintiffs had actual knowledge to the contrary. See *Wilson v. Anderson*, 194 Ga. App. 167 (390 SE2d 86) (1990). "The legislature has provided and the courts of Georgia have held that an attorney should be able to rely upon the authority of the other attorney of record." *Lennon v. AECK Assoc.*, 157 Ga. App. 294, 295 (277 SE2d 289) (1981). To hold that it would be incumbent upon plaintiffs

to verify that counsel, who are officers of the court, had obtained the City Council's necessary specific approval would mean that there can be no enforceable settlement agreement without proof that the client himself gave his express approval. Such a holding would be contrary to Georgia's long-standing recognition that attorneys have apparent authority to enter into enforceable agreements on behalf of their clients. *Brumbelow v. Northern Propane Gas Co.*, supra at 676 (2).

> Regardless of the degree of actual authority extended by a principal to his agent as between the two of them, nonetheless the principal will be liable for certain acts of his agent within the scope of the agent's apparent authority. [Cit.]

*City of Gainesville v. Pritchett*, 129 Ga. App. 475, 477 (3) (199 SE2d 889) (1973). "Accordingly, [the City's] contention that the settlement is invalid . . . because [the City Council], [it]self, did not sign anything is without merit." *Davis v. Davis*, 245 Ga. 233, 235 (1) (264 SE2d 177) (1980).

By answering the certified question in the affirmative, this court, in effect, holds that the City's attorneys are not "officers of the court" upon whose authority and representations the trial court and opposing counsel were justified in placing their reliance. With this holding, I cannot agree. "The client's remedy, where there have been restrictions not communicated to the opposing party, is against the attorney who overstepped the bounds of his agency, not against the third party." *Brumbelow v. Northern Propane Gas Co.*, supra at 675 (2). In my opinion, the question certified to this court by the United States Court of Appeals should be answered in the negative.

I am authorized to state that Justice Thompson joins in this dissent.

DECIDED MAY 30, 1995.

*Joe M. Harris, Overtis H. Brantley, June D. Green, Clifford E. Hardwick IV, Robin J. Shahar, Amy R. Snell, Willie J. Lovett, Jr.,* for appellants.

*Boyce, Ekonomou & Atkinson, Andrew J. Ekonomou, Howell A. Hall, Jay A. Sekulow, John D. Etheriedge, James M. Henderson, Sr., Keith A. Fournier,* for appellees.