27017. CITY OF EAST POINT *v.* UPCHURCH PACKING COMPANY.

DECIDED NOVEMBER 25, 1938.

*Ezra E. Phillips,* for plaintiff. *Norman H. Fudge,* for defendant.

BROYLES, C. J. The City of East Point, a municipal corporation, brought a suit against the Upchurch Packing Company, in the sum of $2118.21, for electric power furnished to it by the city from August, 1934, through February, 1937. The petition alleged that the amount sued for was the difference between what defendant was charged for power during the above-stated period and what it should have been charged, because of the fact that the readings of the meter measuring the current were multiplied by "30," whereas they should have been multiplied by "40." The defendant in its answer denied any indebtedness; and, in an amendment thereto, set up an estoppel by alleging that, when the meter was installed in the defendant's plant, Ernest Hutchinson, acting for the plaintiff, as superintendent of its water and electric-light department, advised the defendant that, in computing the amount of current consumed, the reading of the meter should be multiplied by "30;" and that thereafter the plaintiff had rendered to defendant bills on such basis until early in 1937, when defendant's East Point plant had been discontinued and dismantled; that defendant had relied on the plaintiff's representations, made through its agent Hutchinson, and had no way of knowing they were not true; that all of said current was used by the defendant in processing its

packing-house products, and that the selling price thereof was based on a cost that included the cost of the current, and that all of said products were sold by the defendant during. the period covered by plaintiff's suit at a lower price than they would have been sold had the higher current cost now claimed by the plaintiff been demanded each month during said period; that, furthermore, if the higher charge had been so demanded by the plaintiff, the defendant would have discontinued the operation of its East Point plant two years before it was discontinued, and would have operated solely in its Atlanta plant where all of its business could then have been handled and is now being handled; that the plaintiff was guilty of gross negligence in failing to make a proper inspection of the meter when it was installed, or within a reasonable time thereafter, and that such an inspection would have disclosed the alleged defect, and that because of such negligence the plaintiff is now estopped to deny the correctness of the bills for electric current which it has heretofore presented to defendant and collected.

The plaintiff demurred to said amendment on various grounds, the principal ones being: (a) that it is not alleged in the amendment that Ernest Hutchinson, while acting as superintendent of the water and light department of the city, was authorized by the city to advise the defendant that the cost of electric power used by it should be ascertained by taking the reading of the meter and multiplying it by "30," or that such an agreement was made with the consent or knowledge of the city, or that it was ever known by the city; and (b) that no facts set up in the amendment are sufficient "to raise an estoppel" against the city. The amendment was allowed, and the demurrer thereto was overruled. The case proceeded to verdict and judgment for the defendant; and, subsequently, the plaintiff's motion for a new trial was overruled.

The first question is whether the demurrer to said amendment was properly overruled. We think this question, as well as the question whether the court erred in denying a new trial, is controlled by the answer to the further question: was the city, under the pleadings and the evidence, estopped from denying the correctness of the bills for electric current which it had collected from the defendant? It is well-settled law in this State that "in the operation of an electric-light and water plant, a municipal corporation is engaged in a non-governmental function." *Carruthers*

v. *Hawkinsville,* 42 *Ga. App.* 476 (2) (156 S. E. 634), and cit. It is also well settled that "in order to create an equitable estoppel it is not necessary that there should be an intentional moral wrong, [but that] negligence, when there is a duty cast upon a person to disclose the truth, may supply the place of intent, where the effect of such negligence is to work a fraud on the party setting up the estoppel." 21 C. J. 1169, § 175. This principle of estoppel was applied by this court in *Brown* v. *W. U. Tel. Co.,* 39 *Ga. App.* 152 (147 S. E. 151), where it was ruled that the telegraph company was estopped by its negligence from setting up a certain rule of the company. "Misrepresentation of a material fact, made wilfully to deceive, or recklessly without knowledge, and acted on by the opposite party, or if made by mistake and innocently, and acted on by the opposite party, constituties legal fraud." Code, § 37-703; *Elder* v. *Allison,* 45 *Ga.* 13; *Walters* v. *Eaves,* 105 *Ga.* 584 (2) (32 S. E. 609).

It is true that a municipal corporation, while exercising its *governmental* functions, is not subject to an estoppel, but, in our opinion, where, as in the instant case, it was acting in its *private* or *proprietary* capacity, it may be so subject. This precise question does not seem to have been directly passed upon by either of the appellate courts of this State, but it has been decided by the courts, State and Federal, of our sister States, and by other law authorities. In 21 C. J. 1190, 1191, § 193, the following statement is made: "A municipal corporation, as well as a private corporation, may be subject to an estoppel in pais from the words, acts or conduct of its officers or agents as to its business affairs, if acting within the scope of their authority, even if acting as de facto officers or agents, where the public [the corporation?] is acting through its officers or agents in its private or proprietary, as distinguished from its governmental, capacity, and the subject-matter is not ultra vires." In Griffin *v.* Oklahoma Gas Cor., 37 Fed. (2d) 545 (10), it is held that the doctrine of estoppel applies to a city acting in its proprietary capacity. In City of Denver *v.* Denver Cor., 23 Fed. (2d) 287, the court, in paragraph 12 on page 299, said: "When acting in a proprietary capacity, the city is subject to many of the same restrictions as a private individual, including estoppel." In Safety Cable Co. *v.* Baltimore, 66 Fed. 140 (1), the court held: "Cities and towns, as municipal

corporations, possess a double character,—the one governmental, legislative, or public; the other proprietary or private. In the former such a corporation is made, by the State, one of its instruments for the exercise of certain political powers, which can not be controlled or embarrassed by any contract of the corporation; but, in its proprietary or private character, powers are conferred for the private advantage of the particular corporation, and, as to such powers, and contracts made thereunder, such corporations are to be regarded as private corporations." In Melin *v.* Community School District, 312 Ill. 376 (144 N. E. 13), the Supreme Court of Illinois, on page 16, paragraphs 11-13, ruled: "A municipal corporation, when acting in its private, as contradistinguished from its governmental, capacity, may be estopped." In 21 C. J. 1186, 1187, § 190, it is stated: "An equitable estoppel may be invoked against the United States, a State, a municipal corporation, or other governmental agency or instrumentality in respect of acts done in its so-called proprietary or private capacity, as distinguished from its so-called governmental or public capacity in the strict scope of which it can not be estopped; and a failure to observe this distinction, or to recognize and point out the absence of one or more of the essential elements of a perfect estoppel, may be the reason for decisions and dicta which apparently deny this applicability of the doctrine of equitable estoppel, especially as against a State or the United States, for in some cases, it seems, the doctrine is less liberally applied against the United States or a State than it is against a municipal corporation."

In the instant case, the evidence authorized the jury to find that Hutchinson, the superintendent of the plaintiff's water and electric-light department, was acting within the scope of his duties as such superintendent when he installed the meter in question, and when he advised or instructed the defendant that, in computing the current measured by the meter, the readings of the meter should be multiplied by "30." On this point Hutchinson testified: "I did not have to take it up with the city council to put in a new meter [the meter in question]. I had authority to get a new meter. I had the new meter checked. Any time I had to make an installation, I never took that up with the council at all, all the time I was there. I gave the multiple to the office when the test was made. I took it up with the chairman of the light and water committee.

At this time Mr. Coleman was my chairman. . . I installed this one just like I installed them all, for twenty years." Henry Coleman, chairman of the plaintiff's electric-light and water committee at the time the meter was installed, testified as follows: "Any installment of equipment at the plants out there was done through instructions from Mr. Hutchinson. As to whether necessary installations were made without taking it up with the mayor and council, I served six years as a member of council; they didn't come before council for that in the six-year time that I was in there. . . It was Mr. Hutchinson's duty to go down and make whatever change was necessary, if meters developed some defect such as occurred to Upchurch Packing Company. He did not have to wait for authority from me or from city council. He looked after the department for the city. . . As to whether I ever authorized the use of the multiple 30 on a meter or transformer which required 40, I did authorize Mr. Hutchinson to make a notation on the ledger sheet after the man tested the meter and reported to Mr. Hutchinson that it should be the rate of 30 to 1, and I, as chairman of the light and water committee, authorized the notation of this ledger sheet. . . It was not necessary to have a meeting [of council] out there about this figure 30."

The above-stated evidence amply authorized a finding that the plaintiff, through its authorized agent, had made to defendant the misrepresentation of fact upon which the defendant's plea of estoppel was based. In our opinion, the overruling of the demurrer to said plea was not error. The evidence supported the verdict for the defendant, and none of the special grounds of the motion for new trial shows cause for a reversal of the judgment.

*Judgment affirmed. MacIntyre and Guerry, JJ., concur.*