77271. STAR LAUNDRY, INC. v. CITY OF WARNER ROBINS.
77272. STAR LAUNDRY, INC. v. JOHNSON.
77273. RUSHING v. CITY OF WARNER ROBINS.
77274. RUSHING v. JOHNSON.
(377 SE2d 709)

BANKE, Presiding Judge.

The City of Warner Robins, Georgia, filed separate actions against the two appellants (Star Laundry, Inc., and Margie Rushing d/b/a Master Cleaners) to recover the difference between the amounts it should have charged them for water and sewer service between January of 1986 and March of 1987 and the lesser amounts it actually charged them for such service during that period. The appellants denied liability on the ground that the charges billed to them by the city had been specifically authorized by its then mayor, appellee Ralph Johnson. They also filed third-party actions against Johnson seeking to be indemnified by him for any recovery the city might ultimately obtain on its claims against them. The trial court granted motions for summary judgment filed by the city and by Johnson in the two actions, prompting the appellants to file these appeals.

Both appellants are in the laundry business, with the result that they are commercial users of water and sewer services. As the result of the enactment of a new rate ordinance by the city council in 1985, appellant Star Laundry's monthly water and sewer bill increased more than one-hundred fold, from $38.50 to over $4,000, while appellant Rushing's monthly bill increased more than ten fold, from $38.50 to over $400 per month. Acting separately, the owners of the two businesses contacted the city utility department to express their dissatisfaction, and both were referred to the mayor, who agreed to help them. As a result of the mayor's intervention, the city subsequently began billing the appellants pursuant to a "phase-in" arrangement, under which their old rates were to be increased to those called for under the new ordinance on a more gradual basis. However, Star Laundry's owner, Jeff Carter, continued to seek more permanent relief from the rate increase; and in March of 1986, he delivered to city hall seven copies of a letter addressed to the "Mayor and Council" in which he petitioned the city to enact "a 44% decrease in the recently implemented rate structure," so as to bring its water and sewer rates in line with those existing in several other Georgia cities whose rates he had surveyed.

The mayor was receptive to Carter's request; and at a subsequent meeting attended by the mayor, Carter, the utility supervisor, and the city clerk, a rate structure was agreed upon for Star Laundry which was substantially lower than the ordinance rate. Both Star Laundry and Master Cleaners were billed pursuant to this special rate schedule for approximately the next year, until the city council learned of it and ordered the arrangement terminated. The difference between the charges billed to Star Laundry during this period and those called for under the rate ordinance was approximately $75,000, while the difference between the charges billed to Master Cleaners and those called for under the ordinance was approximately $7,000. The city was awarded summary judgment for these sums, respectively, in the present actions.

The appellants are represented by the same counsel and have submitted virtually identical briefs and enumerations of errors in support of their appeals. Although numerous alleged errors are asserted therein, many of these are either overlapping or entirely redundant, and the issues actually raised by the appeals may be summarized as follows: (1) Whether Johnson enjoyed immunity from liability to the appellants for acts undertaken in his official capacity as mayor, (2) whether the appellants were entitled to invoke the defense of equitable estoppel against the city, (3) whether the trial court erred in allowing the appellees to file depositions in support of their summary judgment motions less than 30 days prior to the hearing thereon, and (4) whether the trial court erred in failing to consolidate the two law-

suits. *Held*:

1. (a) Appellee Johnson was properly granted summary judgment on the basis of his qualified immunity from liability for actions undertaken in his official capacity as mayor. " 'In the absence of fraud or a statute providing for liability, municipal officers acting in a legislative capacity are not liable in damages for acts done in their official capacity, although such acts are void as in excess of jurisdiction, or otherwise without authority of law.' " *Koehler v. Massell*, 229 Ga. 359, 365 (191 SE2d 830) (1972), quoting 62 CJS, Municipal Corporations, § 545 b (1), p. 1009. The Court further held in *Koehler*, supra, that in order to subject municipal officers to personal liability for actions undertaken in their official capacity, it is necessary to prove not merely that such actions were characterized by bad faith, malice, or fraud but also to show that there was a "direct or indirect pecuniary gain to the municipal officers accruing therefrom." Id. at 366.

The appellants assert in their briefs on appeal that Johnson's actions "savored of fraud" in that he implicitly represented to them by his actions that he was authorized to adjust their rates by himself, without the intervention of the city council. However, even if the mayor did implicitly make such a representation to the appellants, it could not be considered actionable since the extent of his legal authority in this regard was a question of law rather than of fact. "Misrepresentations as to questions of law do not give rise to an action for fraud." *Garrison v. Dept. of Transp.*, 240 Ga. 840, 841 (242 SE2d 615) (1978). Moreover, it is apparent without dispute from the record that the mayor received from the appellants no pecuniary gain or benefit of any kind in return for his intervention on their behalf. Thus, the evidence conclusively establishes his immunity from personal liability. Accord *Haze Edwards Elec. Co. v. Turvey*, 153 Ga. App. 173 (264 SE2d 706) (1980).

(b) The appellants contend on appeal that the mayor's immunity from liability was waived by the city's purchase of liability insurance coverage applicable to the acts and omissions of its elected officials. However, no such allegation appears in either of the third-party complaints, and no evidence suggesting the existence of such an insurance policy was ever submitted. Instead, the issue was first raised by the appellants in briefs filed *after* the trial court had already ruled on the summary judgment motions, and then only by reference to unspecified "public records" purportedly showing the existence of such coverage. Inasmuch as this theory of liability was neither presented to nor ruled on by the trial court prior to its ruling on the summary judgment motions, it presents nothing for review on appeal. Accord *Hanover Ins. Co. v. Nelson Conveyor &c. Co.*, 159 Ga. App. 13, 15 (282 SE2d 670) (1981).

2. Although it is undisputed that the mayor was not authorized

to lower the appellants' water and sewer rates unilaterally, without the intervention of the council, it does not necessarily follow that the city is entitled to repudiate his actions in pursuing the present claims against the appellants. A very similar situation was presented in *City of East Point v. Upchurch Packing Co.*, 58 Ga. App. 829 (200 SE 210) (1938), which, like the present cases, involved a suit by a municipality to recover the difference between the amount charged a commercial user for utility service during a specified time period and the amount the user should have been charged. In its answer, the customer denied liability based on the doctrine of equitable estoppel, alleging that it had relied to its detriment on the correctness of the charges billed to it during the period in question, both by pricing its products lower than it would otherwise have priced them and by not moving its operations out of the city altogether, as it ultimately did after the mistake came to light and was corrected by the municipality. Observing that the defense of estoppel is generally available against a municipal corporation with respect to claims involving the discharge of private or proprietary (as opposed to governmental) functions, and further observing that "[i]t is well-settled law in this state that 'in the operation of an electric-light and water plant, a municipal corporation is engaged in a non-governmental function' (cit.)," the court held that the customer was entitled to a trial on the merits of its estoppel defense. Id. at 830-831. Accord *Holland v. City of Calhoun*, 114 Ga. App. 51, 52 (150 SE2d 155) (1966), rev'd on other grounds *City of Calhoun v. Holland*, 222 Ga. 817 (152 SE2d 752) (1966).

Like the defendant in *City of East Point v. Upchurch Packing Co.*, supra, the appellants in the cases before us maintain that they relied to their detriment on the rates billed to them by the city during the period in question. Mrs. Rushing averred in an affidavit submitted in opposition to the city's motion for summary judgment that she would have increased her prices and "taken other corrective steps" had she known the rates being charged to her were incorrect; while Mr. Carter testified that he would have taken such specific steps as increasing his prices, terminating some of his employees, and either farming out or, where possible, renegotiating his high-volume contract commitments. Although in granting the city's motions for summary judgment the trial court found that the appellants had sought both "to avoid the legal water rates" and "to avoid a public hearing by the full governing authority of the city," we have been cited to no evidence which would support, much less demand, an inference that the appellants were attempting to circumvent the legal process in their dealings with the mayor. The fact that the appellants did not challenge the mayor's authority to deal with them on the city's behalf certainly establishes no basis, in and of itself, for a conclusion that they were involved in a surreptitious effort to avoid going before the

city council, particularly in light of the fact that Carter addressed his written petition for rate relief to both the council and the mayor and delivered enough copies of it to city hall to enable each member of the council to receive one. Furthermore, the mayor candidly admitted during his deposition that it was he who made the decision not to present the matter to the council, stating that he "didn't want the publicity at that time because of the resistance that we were receiving from other commercial [users]. . . ." Under the circumstances, we find no basis for the trial court's apparent conclusion that the appellants were acting surreptitiously or in bad faith.

We reject the city's contention that to allow the appellants to assert the defense of equitable estoppel in these actions would be to violate the mandate of OCGA § 45-6-5, which provides as follows: "Powers of all public officers are defined by law and all persons must take notice thereof. The public may not be estopped by the acts of any officer done in the exercise of an unconferred power." Except when the municipality's ability to exercise its governmental powers is itself threatened by the unauthorized action of a municipal officer, the term "unconferred power" as used in this statute has traditionally been interpreted as referring to the powers of the *municipality* rather than the powers of the *officer.* "While a municipality is not estopped to deny the validity of a contract wholly beyond its powers, it may be estopped by the exercise of contractual powers legally vested in it, and even by the exercise of governmental powers, to prevent manifest injustice and wrongs to private persons, where the restraint placed upon a municipality to accomplish that purpose does not interfere with the exercise of governmental powers of the municipality." *City of Jefferson v. Holder,* 195 Ga. 346, 355 (24 SE2d 187) (1943). Accord *City of Summerville v. Ga. Power Co.,* 205 Ga. 843 (2), 846 (55 SE2d 540) (1949).

The cases relied upon by the city in this connection are consistent with this interpretation and do not support its contention that a municipality may never be estopped from repudiating the unauthorized acts of its officials. In *Corey Outdoor Advertising v. Bd. of Zoning Adjustment of Atlanta,* 254 Ga. 221 (3) (327 SE2d 178) (1985), the issue before the Court was whether the estoppel doctrine could be employed to validate a sign permit which had been issued by a city official in direct contravention of restrictions appearing in the city's zoning ordinance. In holding that the doctrine could not be employed to this effect, the court noted that the regulation of zoning was an important governmental function and that "equitable estoppel will not apply so as to frustrate or contravene a governmental function of a governmental unit." Id. at 224. At issue in *Horkan v. City of Moultrie,* 136 Ga. 561 (71 SE 785) (1911), was whether the estoppel doctrine could be applied in such a manner as to bind the city to contin-

ued compliance with an agreement to supply free water service to a property owner for an indefinite period of time. Citing the principle that a city council cannot "so tie the hands of its successors as to result in great injury to the municipality and to the public," the court concluded that the city could not even have bound itself to such an arrangement by ordinance and that it consequently could not be estopped from contending that the alleged contract was void. Id. at 563. Accord *Screws v. City of Atlanta,* 189 Ga. 839, 843 (2) (8 SE2d 16) (1940) (where a contract to supply water free of charge for a period of 25 years was held to be unenforceable on identical grounds). Similarly distinguishable are such cases as *City of Calhoun v. Holland,* supra, 222 Ga. 817 (holding that the estoppel doctrine could not be applied in such a manner as to avoid the statutory ante litem notice arrangement imposed by former Code Ann. § 69-308 [currently OCGA § 36-33-5]); *City of Atlanta v. Bull,* 161 Ga. App. 648 (288 SE2d 335) (1982) (holding that an oral commitment made by an ad hoc committee chairman was not contractually binding on the city where its charter specifically required that all city contracts be signed by the mayor or his duly authorized designate); and *City of Jonesboro v. Shaw-Lightcap, Inc.,* 112 Ga. App. 890 (147 SE2d 65) (1966) (holding that a contract executed by the mayor, acting alone, was not binding on the city where its charter specified that the power to contract would be exercised by the mayor and council acting jointly).

Unlike the litigants in the foregoing cases, the appellants in the present case do not seek to employ the doctrine of estoppel as a sword, so as to bind the city to continued compliance with an otherwise unenforceable agreement or to restrain its exercise of its governmental powers. Rather, they seek to employ the doctrine as a shield, in defense of a monetary claim being asserted against them by the city based on events which have already transpired. They merely contend that, having sought to obtain a reduction in their water and sewer rates by negotiating with the city in good faith through its chief executive officer, and having been led to believe by the actions and representations of the mayor and other administrative officials that these efforts had been successful, they were entitled to rely on the lower rates thereafter charged them *until they were informed that those rates had not been properly authorized.* Such an application of the estoppel doctrine would in no way impair the city's future ability to exercise its governmental functions, nor would it legitimize any action by a municipal officer which exceeded the powers of the municipality itself. We accordingly hold that the appellants are entitled to assert the defense of estoppel in opposition to the city's claims, with the result that the trial court erred in granting the city's motions for summary judgment.

3. We are unable to review the appellants' contention that the

trial court erred in considering certain depositions which the appellees filed less than 30 days prior to the summary judgment hearing, inasmuch as no motion was made in the trial court to strike these depositions, and inasmuch as it has not been suggested how the testimony contained therein might have influenced the court's rulings. See *Bradbury v. Mead Corp.*, 174 Ga. App. 601 (330 SE2d 801) (1985).

4. The appellants' contention that the trial court erred in failing to consolidate the two separate actions similarly presents nothing for review, as we have been cited to no ruling by the court denying the appellants' motions in this regard, and as we have been offered no explanation as to how the failure to consolidate the two cases might have prejudiced the court in its consideration of the merits of the two actions.

*Judgment affirmed in Case Nos. 77272 and 77274; judgment reversed in Case Nos. 77271 and 77273. Birdsong and Beasley, JJ., concur.*

DECIDED JANUARY 5, 1989 —
REHEARING DENIED JANUARY 19, 1989 —

*Pamela M. Richards*, for Star Laundry & Rushing.
*James E. Elliott, Jr.*, for City of Warner Robins.
*George Kushinka, Fred E. Godwin, Jr.*, for Johnson.