### 46676. CITY OF WARNER ROBINS v. RUSHING.
### 46683. CITY OF WARNER ROBINS v. STAR LAUNDRY, INC.
(381 SE2d 38)

HUNT, Justice.

We granted certiorari to the Court of Appeals' opinion in *Star Laundry v. City of Warner Robins,* 189 Ga. App. 839 (377 SE2d 709) (1989) in order to determine whether the defendants were entitled to assert the defense of estoppel in opposition to the city's suit for amounts claimed for water and sewer services.

As the result of a new rate ordinance, the defendants' monthly water and sewer bills increased dramatically. The defendants sought help from the mayor who agreed to a rate structure for each of the defendants much lower than that required by the ordinance. The defendants were billed at this lower rate until the city council learned of the agreement approximately a year later and put an end to it. Id. at 840. The trial court awarded summary judgment to the city in its suit against the defendants for the difference between the amount charged for water and sewer services under the agreement with the mayor, and that required by the ordinance. The Court of Appeals reversed, holding the city was estopped from recovering the amounts claimed.

The city contends the defendants are barred from asserting estoppel by OCGA § 45-6-5 which provides:

> Powers of all public officers are defined by law and all persons must take notice thereof. The public may not be estopped by the acts of any officer done in the exercise of an unconferred power.

It is undisputed the mayor had no authority to lower the defendants' water and sewer rates. *Star Laundry v. City of Warner Robins,* supra at 841 (2). A governing authority may not be estopped regarding an ultra vires act. OCGA § 45-6-5; *Corey Outdoor Advertising v. Bd. of Zoning,* 254 Ga. 221, 224 (327 SE2d 178) (1985).

The defendants' argument that OCGA § 45-6-5 and *Corey Outdoor Advertising v. Bd. of Zoning,* supra, should not apply here because the defendants relied to their detriment on the agreement established by the mayor and, had they not done so, they might have taken steps to reduce their obligation under the rates established by the ordinance (such as charging their customers more or reducing the number of customers) misses the mark. Detrimental reliance, which is

a necessary element of any claim of equitable estoppel, see generally *Bell v. Studdard*, 220 Ga. 756, 760 (4a) (141 SE2d 536) (1965), is not a factor where estoppel cannot be applied against the city as a matter of law.

Unlike *City of East Point v. Upchurch Packing Co.*, 58 Ga. App. 829 (200 SE 210) (1938), relied on by the Court of Appeals, and *Quillian v. Employees' Retirement System of Ga.*, 259 Ga. 253 (379 SE2d 515) (1989) where the governing entities were estopped by the action of a governmental official, this case does not involve an irregular or unauthorized *method* of exercising power. In *City of East Point*, supra, the city official who misread the meter and caused the underbilling was acting within the scope of his authority as superintendent of the city's electric department in reading the meter. Similarly, in *Quillian*, supra, the state official, whose calculation of Judge Quillian's pension the judge relied on in submitting his resignation, was acting within the scope of his authority as Director of the Employees' Retirement System in calculating that pension. Here, however, as in *Corey Outdoor Advertising*, supra, the government official had *no authority* to take the action in question, in this case, setting water and sewer rates. Further, contrary to the defendants' arguments, and the position of the dissent, there is no evidence the city was aware of the agreement by the mayor for a lower rate structure for the defendants, and no evidence the council members ratified the agreement.[1] We do not reach the defendants' argument, raised for the first time on appeal, that the city was negligent in failing to discover that agreement earlier.[2]

Accordingly, the defendants may not avail themselves of the doctrine of estoppel, and the trial court properly granted summary judgment in favor of the city.

*Judgment reversed. All the Justices concur, except Smith, J., who dissents.*

CLARKE, Presiding Justice, concurring.

I concur in the judgment of the majority and in doing so note

---

[1] Several of the council members suggested the defendants contact the mayor so that he would be aware of the defendants' problems. However, the record is clear these council members did not direct the defendants to try to work out any agreement with the mayor, did not expect the mayor to take any specific action, and certainly did not expect he would enter into an unauthorized agreement with the defendants. We are unable to conclude, as does the dissent, that the council members' testimony is expressly or impliedly contradicted so as to create a fact issue as to ratification.

[2] We note the establishment of water and sewer rates is a governmental function, *Glendale Estates v. Mayor &c. of Americus*, 222 Ga. 610, 612 (1b) (151 SE2d 142) (1966); *Horkan v. Moultrie*, 136 Ga. 561, 563 (1) (71 SE 785) (1911) for which the city is not liable in negligence. OCGA § 36-33-1 (b); *Corey Outdoor Advertising v. Bd. of Zoning*, 254 Ga., supra at 224 (3).

that the lower billing for water and sewer services to the customers occurred as a result of a request by those customers to the mayor. In my view a different result might be mandated if the lower rates had been unilaterally established without a request on the part of the customer. In such a case I believe the law should not impose upon the customer the duty to inquire into the authority of the party or parties establishing the rate unilaterally. Since this is not what occurred here, I concur that no estoppel applies to the claim of the City of Warner Robins.

SMITH, Justice, dissenting.

I do not think, under the unique facts and procedural posture of this case, that the majority is correct in finding that the city may not be estopped. Summary judgment was granted below; however, there are unresolved facts which require this case to be submitted to a jury for disposition based upon facts in the record which indicate that the act may not have been ultra vires. The new agreement may have been made with the implied consent of the members of the city council.

When viewed in favor of the appellees, the parties who opposed summary judgment, the facts show that appellee Rushing contacted four members of the city council of Warner Robins to voice objection to the huge increase in her water and sewer service bill. Each of the council members told her to contact the mayor about the problem. The owner of appellee Star Laundry also contacted members of the city council. He too was referred to the mayor. The mayor agreed to help and

As a result of the mayor's intervention, the city subsequently began billing the appellants pursuant to a "phase-in" arrangement, under which their old rates were to be increased to those called for under the new ordinance on a more gradual basis.

*Star Laundry v. City of Warner Robins*, 189 Ga. App. 839, 840 (377 SE2d 709) (1989). Appellee Star Laundry continued to seek relief and

[Mr. Carter, the owner of Star Laundry,] delivered to city hall seven copies of a letter addressed to the "Mayor and Council" in which he petitioned the city to enact "a 44% decrease in the recently implemented rate structure," so as to bring its water and sewer rates in line with those existing in several other Georgia cities whose rates he had surveyed.[3]

---

[3] The original change in the water rates increased Star Laundry's water and sewer bill from $38.50 to over $4,000 per month. *Star Laundry v. City of Warner Robins*, supra.

> The mayor was receptive to Carter's request; and at a subsequent meeting attended by the mayor, Carter, the utility supervisor, and the city clerk, a rate structure was agreed upon . . . which was substantially lower than the ordinance rate.

Id.

The appellees depended, as does the public generally, on the members of the city council and the mayor to attend to their problems. The members of the council referred the appellees to the mayor for help with the huge increases in their bills. The mayor had several meetings with the appellees. The letter with seven copies addressed to the "Mayor and Council" was delivered to city hall. The mayor met with the appellees and the city utility department manager and city clerk and agreed upon a rate structure designed to give the appellees relief.

It is certainly within the realm of reason that appellees thought, as would any citizen, that their problems had been attended to in a lawful manner by their duly elected representatives. The appellees relied upon the new rate structure and made no attempts to implement changes in their business practices to offset the higher rates.[4] These facts plus the fact that the appellees continued to be billed under the new agreement for approximately a year certainly shows that the agreement could have very well been ratified by implication by the city council members.

It really stretches the imagination to presume that after all of the above occurred, and with the number of city hall people involved, that the members of the city council did not at least know about and, by inaction, ratify and consent to the agreement giving the appellees relief from the oppressive rate increase.

All of the facts should be presented to a jury for determination of whether or not, under the unique facts of this case, the members of the counsel gave their implied consent to the agreement by their actions, inaction, and silence for almost a year.

DECIDED JULY 13, 1989.

*James E. Elliott, Jr., Moore & Moore, Bradley W. Bledsoe,* for appellant.
*Pamela M. Richards,* for appellees.

---

[4] The difference between the amounts paid by the appellees and the amount called for in the ordinance was $75,000 for Star Laundry and $7,000 for Mrs. Rushing's laundry.