## A08A1061. EMPLOYEES' RETIREMENT SYSTEM OF GEORGIA et al. v. MELTON.
### (669 SE2d 692)

BARNES, Chief Judge.

The Employees' Retirement System of Georgia ("ERS") and the Georgia Department of Public Safety ("DPS") (collectively "the Agencies") contend the trial court erred by granting summary judgment to Robert Wayne Melton and requiring them to pay attorney fees. We agree, and reverse the grant of summary judgment and the award of attorney fees to Melton.

---

[8] See id. at 682-685 (2).

In Georgia,

> [t]he standards applicable to motions for summary judgment are announced in *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991). When a trial court rules on a motion for summary judgment, the opposing party should be given the benefit of all reasonable doubt, and the court should construe the evidence and all inferences and conclusions therefrom most favorably toward the party opposing the motion. On appeal of the grant or denial of a motion for summary judgment, this court conducts a de novo review of the law and the evidence. Further, contract disputes are particularly well suited for adjudication by summary judgment because construction of contracts is ordinarily a matter of law for the court.

(Citations omitted.) *Overton Apparel v. Russell Corp.*, 264 Ga. App. 306, 307 (1) (590 SE2d 260) (2003).

The record shows that Melton is a former employee of the Georgia Peace Officer Standards and Training Council ("POST"), who apparently from the time he was hired, was reported to the ERS as being eligible for early retirement under OCGA § 47-2-223 (b). In 1996, after twenty-two and one-half years in law enforcement in DeKalb County, Melton was hired by POST. He "was attracted to the [POST] position based upon the sworn retirement plan that was offered to [him]. This retirement plan became the primary motivation to become employed." Melton's employment records and pay information indicated that he was enrolled in the "sworn retirement plan," which he understood to mean that he could retire at age fifty-five with ten years of service. Melton, however, did not have a position in the Uniform Division and never had such a position, never trained as a State Trooper, and never has contended in this litigation that he ever served in the Uniform Division of DPS. Although reported as eligible for early retirement, Melton made no greater contribution to the retirement system than employees who are not so eligible. In August 2005, Melton notified POST that he would be retiring March 1, 2006, and that he would be submitting his retirement application in February 2006.

In March 2005, the ERS provided DPS with a list of employees that ERS believed were not enrolled in the appropriate retirement plan, and the record further shows that the Commissioner of DPS learned that DPS had improperly reported to ERS a number of employees as being eligible for retirement as members of the Uniform Division when they were not. The Commissioner met with the Executive Director of the ERS about the problem and learned

that this was a long-standing problem that would have to be resolved in the DPS. As the Commissioner of DPS it is his "duty to make policy decisions and ensure that the policies and procedures are carried out within the Department." See OCGA § 35-2-3. Approximately 54 employees of POST, the DPS, and other attached agencies were reported erroneously as being eligible for early retirement.

After meeting with ERS, the Commissioner decided that "there was no legal reason for employees other than those within the 'Uniformed Division' . . . to be eligible for 'sworn retirement' at the age of fifty-five (55) as set forth in OCGA § 47-2-223 (b)." Thus, after consulting with his staff and receiving advice about interpreting the relevant statutes, he directed the DPS's Human Resources Division to cease the improper reporting, to correct the employees' records, and to report the correct status of the employees to the ERS. The affidavit of the Executive Director of ERS states that he met with the Commissioner of DPS about the early retirement issue, and he knew of no provision that permits POST employees to gain early retirement under OCGA § 47-2-223 (b).

In October 2005, the Human Resources Division of the Georgia State Patrol sent Melton a memorandum advising him that he was "erroneously enrolled in the sworn retirement plan that is specifically reserved by law for members of the Uniform Division of the Georgia State Patrol," and that he would be placed in the nonsworn retirement plan. Melton was also informed that this was a required change beyond the discretion of the State Patrol.

Attached to the memorandum was a letter from the Executive Director of the ERS advising the DPS Commissioner that DPS must make the ultimate determination of which DPS employees were in the Uniform Division, but also advising him that only employees in the Uniform Division would be entitled to the early retirement provisions of OCGA § 47-2-223 (b). The letter further advised the Commissioner that the Department of Law had determined that employees who transferred from the Uniform Division to other agencies would not lose their special retirement status, and that Uniform Division members who had transferred to other agencies but returned to DPS would continue to retain their special status, regardless of the position to which they transferred in DPS.

After receiving this letter, Melton wrote the Executive Director of ERS objecting to the change. In February 2006, Melton submitted a retirement application with an effective date of March 1, 2006. Later, his application for retirement was denied. Unless he was eligible for early retirement under OCGA § 47-2-223 (b), Melton was otherwise not eligible to retire because he was under 60 years of age. When he becomes 60, however, he would be eligible for regular

retirement. Subsequently, Melton resigned from POST, and later filed the complaint leading to this appeal.

Melton's complaint, although asserting claims of breach of contract, violation of equal protection, and equitable estoppel, essentially sought a determination that he was entitled to receive early retirement benefits under the provisions of OCGA § 47-2-223.[1] After the Agencies answered and discovery was completed, the Agencies moved for summary judgment. The motion contended that Melton had no vested right to an early retirement because he was not a member of the Uniform Division of the DPS, he had not been treated differently than any other employee, and the Agencies had a rational basis for correcting his employment status.

Melton also filed a motion for summary judgment. His motion contended that after he had over ten years of service he was "arbitrarily transferred . . . from sworn to non-sworn status . . . breaching . . . his employment [contract]." The Agencies should be estopped from denying him "sworn retirement benefits," and he was denied equal protection of the law because "sworn officers" employed by POST were treated differently than "sworn officers" who were members of the Uniform Division. He further contends that, as the change affected his substantive vested retirement rights, it should have been prospective only.

After considering the parties' cross-motions for summary judgment, briefs, and argument, the trial court ruled that Melton was "enrolled in the 'Sworn Retirement Plan' which afforded [Melton] the right to retire at age 55 upon attaining ten (10) years of creditable service. (This provision has also been referred to as the 'early retirement plan.')" The trial court also noted that the "Retirement System apparently does not have a classification of 'Uniform Division'[;] however, exhibits produced reveal that there is a 'Sworn Officer Plan' in which [Melton] and other employees were previously enrolled."

---

[1] (a) For purposes of this Code section, the term "highest average compensation" means the member's highest average monthly earnable compensation during a period of 24 consecutive calendar months while a member of the retirement system.

(b) Anything in this chapter to the contrary notwithstanding, every person who is in service in the Uniform Division of the Department of Public Safety as an officer, noncommissioned officer, or trooper, or as an officer or agent of the Georgia Bureau of Investigation on June 30, 1970, and every person who enters or reenters such service on or after July 1, 1970, may retire at any time after attaining the age of 55 and upon retirement such retiree shall receive the regular retirement benefits under this chapter, provided that he or she shall in any case receive a minimum monthly retirement benefit equal to 2 percent of his or her highest average compensation for each year of creditable service by filing an application therefor in a manner similar to that provided in Code Section 47-2-110.

The trial court found that Melton had been hired upon the representation that he would be enrolled in the "Sworn Retirement System," and that, while this might have been an error, Melton "would not have had knowledge of this error." The trial court also concluded that when Melton was hired, the Commissioners of DPS had discretion to determine who would be enrolled in the "Sworn System."

The trial court construed OCGA § 47-2-223 (b) as providing early retirement for every person in *service* in the Uniform Division of the EPS. The court concluded that by using the term " '*service*' not '*employment*,' " the statute broadened the category of officers "who[,] while not directly employed in the Uniform Division as a Trooper, could conceivably still be 'in service' in the Uniform Division." The court also found that, as the DPS Commissioner had the discretion to designate officers to be enrolled in the "Sworn Retirement" plan, Melton was properly enrolled in the plan, to which he had vested rights. Thus, the court found that the "Sworn Retirement" plan was part of Melton's contract of employment, see *Swann v. Bd. of Trustees &c. Benefit System*, 257 Ga. 450 (360 SE2d 395) (1987), and that the Agencies violated his contract of employment.

The court further found that the Agencies could correct the problem with the employees who were improperly designated as being eligible for early retirement, but that this correction could only be prospective. Additionally, the court found that under the facts of this case, based upon *Quillian v. Employees' Retirement System &c.*, 259 Ga. 253 (379 SE2d 515) (1989), the Agencies were estopped from changing Melton's retirement status. Finally, the court found that four similarly situated employees were permitted to retire under the Sworn Plan, and thus the Agencies violated the equal protection clause of the Georgia Constitution by treating Melton differently.

1. The Agencies first contend that the trial court erred by finding that they had breached Melton's employment contract because the early retirement plan was never properly a part of Melton's contract of employment. Analysis of the relationship between POST and DPS and proper interpretation of OCGA § 47-2-223 (b) shows that Melton was never in the service of the Uniform Division of DPS, and therefore an early retirement plan was never part of his contract of employment. There is no vested right to benefits which one was never entitled to receive. *Bullard v. Holman*, 184 Ga. 788 (193 SE 586) (1937). Further "to have a property interest, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it. *Bd. of Regents v. Roth*, 408 U. S.

564, 577 (92 SC 2701, 33 LE2d 548) (1972)." (Punctuation omitted.) *Goldrush II v. City of Marietta*, 267 Ga. 683, 695 (8) (482 SE2d 347) (1997).

The DPS is organized and operated under Chapter 2 of Title 35 of the Official Code of Georgia Annotated, OCGA § 35-2-1 et seq. Within DPS "is created and established a division of the [DPS] to be known as the Uniform Division, the members of which shall be known and designated as the 'Georgia State Patrol.' " OCGA § 35-2-30. The Uniform Division consists of "(1) The officers, noncommissioned officers, and troopers of the headquarters staff; [and] (2) The officers, noncommissioned officers, and troopers of one battalion." OCGA § 35-2-31. The jurisdiction and primary duties of the Uniform Division are set out in OCGA § 35-2-32 and additional duties are set out in OCGA § 35-2-33.

POST, however, is organized and operated under Chapter 8 of Title 35 of the Official Code of Georgia Annotated, the "Georgia Peace Officer Standards and Training Act." OCGA § 35-8-1. POST is organized under OCGA § 35-8-3, and POST is assigned to DPS for administrative purposes only. OCGA § 35-8-3 (e). The relationship between the agency assigned to a department and the department is set out in OCGA § 50-4-3.[2] The powers and duties of POST generally are set forth in OCGA § 35-8-7. Because POST is a separate agency that is only assigned to DPS for administrative purposes, the DPS Commissioner had no authority to transfer Melton from POST to duties within DPS. See OCGA § 50-4-3.

Therefore, Melton, as a POST employee, was never employed by DPS, and was never, and has never claimed to be, "in service *in the*

---

[2] (a) An agency assigned to a department for administrative purposes only shall: (1) Exercise its quasi-judicial, rule-making, licensing, or policy-making functions independently of the department and without approval or control of the department; (2) Prepare its budget, if any, and submit its budgetary requests, if any, through the department; and (3) Hire its own personnel if authorized by the Constitution of this state or by statute or if the General Assembly provides or authorizes the expenditure of funds therefor. (b) The department to which an agency is assigned for administrative purposes only shall: (1) Provide record keeping, reporting, and related administrative and clerical functions for the agency; (2) Disseminate for the agency required notices, rules, or orders adopted, amended, or repealed by the agency; (3) Provide staff for the agency subject to paragraph (3) of subsection (a) of this Code section; and (4) Include in the departmental budget the agency's budgetary request, if any, as a separate part of the budget and exactly as prepared and submitted to the department by the agency. (c) Whenever any authority is assigned for administrative purposes, it means only that the state department through which the authority deals with the state shall be that department to which the authority is assigned. Any authority created by state law shall retain its separate identity as an instrumentality of the state and a public corporation. The department to which an authority is assigned is authorized, only with the approval of the authority, to perform for such authority any or all of the functions set forth in subsection (b) of this Code section.

*Uniform Division of the [DPS]* as an officer, noncommissioned officer, or trooper, or as an officer or agent of the Georgia Bureau of Investigation." (Emphasis supplied.) OCGA § 47-2-223 (b). The trial court's focus on the phrase "in service" to expand the reach of OCGA § 47-2-223 (b) fails to consider the following words in the Code section — "in the Uniform Division of the [DPS]." Contrary to the trial court's interpretation, these words limit the scope of OCGA § 47-2-223 (b) to those who served in the Uniform Division, and exclude those who did not.

"In construing a legislative act, a court must first look to the literal meaning of the act. [Cit.] If the language is plain and does not lead to any absurd or impracticable consequences, the court simply construes it according to its terms and conducts no further inquiry. [Cit.]" *Diefenderfer v. Pierce*, 260 Ga. 426-427 (396 SE2d 227) (1990). Thus, "the use of plain language in a statute obviates the need for judicial construction." (Footnote omitted.) *Plymel v. Teachers Retirement System*, 281 Ga. 409, 413 (4) (c) (637 SE2d 379) (2006). Further, a statute should be read according to its natural and most obvious import of the language without resorting to subtle and forced constructions for the purpose of either limiting or extending its operation. *Burbridge v. Hensley*, 194 Ga. App. 523, 524 (1) (391 SE2d 5) (1990).

Here, contrary to the trial court's conclusion, the DPS Commissioner had no authority or discretion to include in the early retirement plan anyone who had not served in the Uniform Division of the DPS. While the Commissioner may have had the authority to transfer "any uniform member" to other duty stations, the Commissioner did not and could not transfer Melton to service in the Uniform Division of DPS, notwithstanding Melton's agreement to be transferred. Melton was not a DPS employee and further, had never "completed training and certification as a Trooper of the Georgia State Patrol."

Even though the Executive Director of ERS stated that "the Department of Public Safety is in the unique position to determine which of its employees are in the Uniform Division," the Executive Director clarified his comments in his affidavit by stating that he "did not intend to imply that the [DPS] had unlimited discretion in determining whom to report as within the Uniform Division." Moreover, membership in the Uniform Division is determined by the criteria in OCGA § 35-2-30, and any attempt by the Commissioner of DPS to designate anyone as a member of the Uniform Division who did not meet the criteria in OCGA § 35-2-30 would be ultra vires and illegal.

Additionally, the trial court's reliance on the designation that Melton was in the sworn peace officer's retirement plan is misplaced. According to the Executive Director of ERS,

> [t]here are no provisions contained in ERS law that offers specific membership rights to our members by virtue of their being sworn peace officers, although certain enforcement personnel of some agencies are granted distinctive benefits by law. ERS must rely on the employing agencies to make the determination as to which employees meet the legal definition, and to report them to us accordingly.

The only provision of our law relevant to this case is OCGA § 47-2-223 (b), and it does not use the term "sworn officer" in its definition of those eligible for retirement under its terms. In his affidavit, the Director stated that he knew of no statutory authority which permits employees of the agencies attached to DPS administratively to gain early retirement under OCGA § 47-2-223 (b). Therefore, the trial court erred by concluding that Melton could be included within the coverage of that Code section.

2. The trial court also erred by concluding that the Agencies were estopped from correcting Melton's retirement status. Although Melton's circumstances are somewhat similar to those in *Quillian v. Employees' Retirement System of Ga.*, supra, 259 Ga. 253, in *Quillian*

> the Court made a distinction "between an irregular exercise of a granted power, and the total absence or want of power," id. at 255 (4) (b), noting that the "public can be and will be estopped by the acts of any public officer *done in the exercise of a power which is expressly conferred by law.*" (Punctuation omitted; emphasis supplied.) Id. at 254 (3) (a). But the converse is equally true. OCGA § 45-6-5 provides: "Powers of all public officers are defined by law and all persons must take notice thereof. *The public may not be estopped by the acts of any officer done in the exercise of an unconferred power.*"

*Dukes v. Bd. of Trustees for the Police Officers Pension Fund*, 280 Ga. 550, 552 (629 SE2d 240) (2006). Further, if a pension decision goes to entitlement, rather than

> to calculation of benefits, the *Quillian* estoppel doctrine does not apply. *Miller v. Clayton County*, 271 Ga. 135 (518 SE2d 402) (1999). In *City of Warner Robins v. Rushing*, 259 Ga. 348 (381 SE2d 38) (1989), the Court applied OCGA

§ 45-6-5[3] and held that a governing authority may not be estopped regarding an ultra vires act, i.e., where a "government official had *no authority* to take the action in question." Id. at 349. See also Black's Law Dictionary, Sixth ed. 1990, p. 1522 (an act is ultra vires if it is "performed without any authority to act on (the) subject").

Id. at 553.

Although it is not apparent which official or officials decided to include those who were not "in service in the Uniform Division" in the OCGA § 47-2-223 (b) early retirement plan, that is of no consequence because no official had the legitimate authority to make that decision.

3. Melton did not state an equal protection claim. All of the employees Melton identified as having been treated differently retired before the Agencies decided to correct the improper designation of employees in the retirement system, and thus they were not similarly situated.

The person who is asserting the equal protection claim has the burden to establish that he is similarly situated to members of the class who are treated differently from him. If the person asserting the violation cannot make the foregoing showing, there is no need to continue with an equal protection analysis.

(Punctuation and footnotes omitted.) *Rodriguez v. State*, 275 Ga. 283, 284-285 (1) (565 SE2d 458) (2002). Therefore, Melton was not denied the equal protection of the law. Additionally, the records show that one of the employees who Melton has identified received a disability retirement and two others retired under the provisions of OCGA § 47-2-123 because of involuntary separation. The basis for the other employee's retirement is not apparent from the record, but nothing establishes that he retired under the provisions of OCGA § 47-2-223 (b). The trial court erred by finding that Melton was denied the equal protection of the law.

4. Because we have reversed the grant of summary judgment to Melton, we must also reverse the trial court's award of attorney fees under OCGA § 13-6-11.

*Judgment reversed. Johnson, P. J., and Phipps, J., concur.*

---

[3] "Powers of all public officers are defined by law and all persons must take notice thereof. The public may not be estopped by the acts of any officer done in the exercise of an unconferred power."

DECIDED NOVEMBER 18, 2008 — 

*Thurbert E. Baker, Attorney General, Bryan K. Webb, Senior Assistant Attorney General*, for appellants.
*McKenney & Froelich, William J. McKenney*, for appellee.